667 So.2d 1277 (1995)
A.B. McCARTY and Elizabeth L. McCarty, individually, and as General Guardians of Lucas McCarty, a Minor
v.
Roy Bradley KELLUM, M.D. and Jackson Ob-Gyn Associates, P.A., a Mississippi Professional Association.
No. 91-CA-01046-SCT.
Supreme Court of Mississippi.
September 28, 1995.
Rehearing Denied January 25, 1996.
*1279 Alan D. Lancaster, William Liston, Liston & Lancaster, Winona, W. Dean Belk, Jr., Clark Davis & Belk, Indianola, for Appellants.
Whitman B. Johnson, III, Currie Johnson Griffin Gaines & Myers, Jackson, Jimmie B. Reynolds Jr., Steen Reynolds & Dalehite, Jackson, for Appellees.
Before HAWKINS, C.J., and PITTMAN and BANKS, JJ.
PITTMAN, Justice, for the Court:

STATEMENT OF THE CASE
On February 5, 1988, A.B. McCarty and his wife, Elizabeth McCarty ("Chuck" and "Elizabeth"), in their individual and representative capacities as the parents and general guardians of Lucas McCarty, their minor son ("Lucas"), filed an original complaint in the Circuit Court of the First Judicial District of Hinds County, Mississippi, against Paracelsus Woman's Hospital, Inc. ("Woman's Hospital"), Roy Bradley Kellum, M.D. ("Kellum") and his professional association, Jackson OB-GYN Associates, P.A. The complaint charged that Dr. Kellum, individually and as the agent of his professional association, and the Woman's Hospital, acting by and through its nurses, were negligent and therefore liable for the severe brain damage sustained by Lucas McCarty during his delivery.
Thereafter, the defendants filed their separate answers, denying that the health care provided to the minor plaintiff deviated from the applicable standard of care, and averring that they were not liable for the brain injury sustained by Lucas McCarty. The Plaintiffs filed a motion for leave to take the depositions of the Defendants' experts on May 20, 1991. This motion was granted; however, the trial court limited the depositions to the information allowed by Rule 26(b)(4) and specifically restricted the Plaintiffs from delving into any bias or interest of the experts.
The Plaintiffs entered into a compromise settlement agreement with the Woman's Hospital, resulting in its dismissal from the lawsuit. The lawsuit then proceeded only against Dr. Kellum and his professional association.
On August 19, 1991, the trial began in the First Judicial District Court of Hinds County, Mississippi. After learning and considering the evidence presented, the jury returned a verdict for the Defendants. On September 3, 1991, the trial court entered an Order of Final Judgment for the Defendants, dismissing Plaintiff's complaint with prejudice.
*1280 A motion for new trial was filed on September 3, 1991, and later denied by Judge Gibbs on September 17, 1991.
Aggrieved by the findings and actions of the trial court, the Plaintiffs perfected this appeal and assign the following as error:
I. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING THE PLAINTIFFS' MOTION TO AMEND THE COMPLAINT TO CONFORM TO THE EVIDENCE MADE PURSUANT TO RULE 15(b) OF THE MISSISSIPPI RULE OF CIVIL PROCEDURE SO AS TO AVER THAT DR. KELLUM DEVIATED FROM THE APPLICABLE STANDARD OF CARE IN CARRYING OUT A TRIAL OF FORCEPS AT THE TIME WHEN HE THOUGHT THAT THE FAILURE OF THE FETUS TO PROGRESS IN THE BIRTH CANAL COULD BE DUE TO CEPHALOPELVIC DISPROPORTION AND THAT THE SUBSEQUENT TRIAL OF FORCEPS CAUSED OR CONTRIBUTED TO THE INJURIES SUSTAINED BY LUCAS MCCARTY.
II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN LIMITING THE SCOPE OF PLAINTIFFS' INQUIRY ON EXPERT WITNESSES' DEPOSITIONS TO THOSE MATTERS SPECIFIED IN RULE 26(b)(4)(A)(i), MISSISSIPPI RULES OF CIVIL PROCEDURE AND SPECIFICALLY PROHIBITING INTERROGATION AS TO MATTERS INVOLVING THE EXPERT'S POTENTIAL INTEREST, BIAS AND/OR QUALIFICATIONS.
III. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING JURY INSTRUCTIONS D-3 AND D-5 OVER THE OBJECTION OF THE PLAINTIFFS THAT THE INSTRUCTIONS WERE ABSTRACT STATEMENTS OF LAW AND NOT FACT SPECIFIC, FAILED TO SET FORTH A STANDARD WHICH WOULD ENABLE THE JURY TO DETERMINE IF THE DEFENDANT KELLUM ACTED AS A MINIMALLY COMPETENT OBSTETRICIAN AND ALLOWED THE JURY FREEDOM TO SEARCH OUT OR "ROVE THE WATERFRONT" IN ORDER TO FIND THAT THE DEFENDANT KELLUM ACTED AS A MINIMALLY COMPETENT OBSTETRICIAN AT THE TIMES IN QUESTION.

STATEMENT OF THE FACTS
On February 7, 1982, Elizabeth McCarty was admitted to Woman's Hospital to have a baby. Elizabeth's pregnancy was normal and without incident. There was no particular cause for concern other than normal concern for a woman during pregnancy and at the time of delivery.
At approximately 12:30 p.m. on February 7, Dr. Kellum performed an artificial rupture of membranes to aid the progress of delivery. This also allowed Dr. Kellum to apply a scalp electrode so that the child's fetal heart rate could be monitored. The fetal heart monitor never showed any indications that there was any acute stress-causing event. The amniotic fluid was also clear, indicating that the fetus was well. Elizabeth's labor progressed normally. She was given an epidural anesthetic to ease the pain associated with childbirth. The epidural was removed at 4:20 p.m. so that Elizabeth would feel more of an urge to push, thereby being better able to help aid in the delivery of the child. Again, at that time, the fetal heart monitor did not show signs of fetal distress.
Elizabeth had been "complete" that is, dilated to ten centimeters for one and a half to two hours. There was conflicting testimony as to whether Elizabeth was so fatigued that she was unable to push. In either case, Dr. Kellum made the decision to make a trial of forceps to complete the delivery of the child. A trial of forceps involves the application of forceps to baby's head after it reaches a certain point in the mother's body in order to pull on the baby to help the mother deliver *1281 the baby. At approximately 5:34 p.m., Dr. Kellum began the application of the forceps. The actual pulling process with the forceps took 3 to 5 minutes. During that time Dr. Kellum pulled approximately 15 seconds and then waited approximately 30 seconds and pulled again for 15 seconds. When no descent of the child's head occurred, the procedure was abandoned in favor of a cesarean section. At 5:42 p.m., the scalp electrode was reapplied to the baby's head; it showed severe fetal bradycardia, which is a deep slowing of the fetal heart rate. At 5:53 p.m., Lucas McCarty was delivered. At the time of delivery, Lucas' heart rate was zero. No forceps marks or indentations on Lucas were recorded.
The baby was resuscitated and began breathing on his own within thirty minutes. After approximately thirty hours, Lucas began having seizures.
Medical experts in the field of obstetrics and gynecology were called on behalf of both parties, as well as Dr. Kellum himself. All agreed that the application of forceps on the fetus carries the risk of fetal bradycardia due to the stretching and/or pulling of the baby's head, which in turn has an effect on the vagal nerve, which controls heart rate. Dr. Kellum testified that he used the forceps because he thought Elizabeth was too tired to push. Dr. Kellum opined that Lucas had a severe bradycardia.
Expert testimony revealed that Lucas' injuries occurred at the time of the application of forceps and were not linked to congenital, inherited metabolic disorders or neurological deficits. The Defendants' experts testified that Lucas' brain damage was caused by a heart attack. The Plaintiffs alleged that the damage to Lucas' brain was caused by a negligent application of forceps.
Lucas was described as being a young man who is trapped in a body that will not respond to his direction with severe motor skill impairment; "a good brain in a bad body."

DISCUSSION OF LAW

I. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING THE PLAINTIFFS' MOTION TO AMEND THE COMPLAINT TO CONFORM TO THE EVIDENCE MADE PURSUANT TO RULE 15(b) OF THE MISSISSIPPI RULE OF CIVIL PROCEDURE SO AS TO AVER THAT DR. KELLUM DEVIATED FROM THE APPLICABLE STANDARD OF CARE IN CARRYING OUT A TRIAL OF FORCEPS AT THE TIME WHEN HE THOUGHT THAT THE FAILURE OF THE FETUS TO PROGRESS IN THE BIRTH CANAL COULD BE DUE TO CEPHALOPELVIC DISPROPORTION AND THAT THE SUBSEQUENT TRIAL OF FORCEPS CAUSED OR CONTRIBUTED TO THE INJURIES SUSTAINED BY LUCAS MCCARTY.
The original complaint stated the child suffered permanent "hypoxic brain damage" as a result of the Defendants negligence.
At the close of the Defendant's case, the Plaintiffs moved under Miss.R.Civ.P. 15(b) to amend the complaint so as to conform to the evidence presented in the case. The following colloquy occurred between Plaintiffs' counsel, Mr. Liston, and defense counsel, Mr. Johnson:

BY MR. LISTON: May it please the Court, comes now the plaintiffs and move pursuant to Rule 15-B of the Mississippi Rules of Civil Procedure to amend the complaint to conform to the evidence that has been introduced in this case in the following respect: That Dr. Kellum deviated from the applicable standard of care, and that he carried out a trial of forceps when he thought that the failure of the delivery to progress could be CPD ... and that as a result thereof, the forceps was carried out and the injuries occurred which are sued on herein.

BY THE COURT: Let me understand what you're saying, Mr. Liston. You are alleging now that there's proof to show that there was a deviation from the standard of care by using the trial or forceps from the CPD ... is that correct.

*1282 BY MR. LISTON: Yes, sir, and in addition to the other areas of deviations as we have already set forth in the pleadings.

BY THE COURT: All right. Mr. Johnson.

BY MR. JOHNSON: I'm going to object. I object to that, Judge, because I moved for a directed verdict at the close of the plaintiffs case. The plaintiffs told us in response to a motion in limine that I had filed and also told us during the motion in limine prior to the time that  in a hearing prior to the time Dr. Alexander testified, that they had no new theories of the case.
I don't think  it has not been established that here was CPD. Dr. Barnes said there wasn't. Those situations are where you deal with a delivery. Their entire theory is being too much force, whether it be traction, rotation, et cetera, on the forceps. They've changed theories however many times, and now we're changing again. And I have  you know  I've now rested. Now, how do I rebut? And I think to allow them to try to bootstrap themselves into a new theory, especially when there is no evidence of causation between the forceps at that time  and in fact, their own experts didn't come in here and say that they were contraindicated, never said that.

BY MR. LISTON: It developed, your Honor, on the testimony of Dr. Anderson that where he testified that if the obstetrician thought that there may be CPD, that a trial of forceps should not be carried out. Dr. Barnes said the same thing. In Dr. Kellum's deposition which we've read into evidence, your Honor, at page 54, lines 1 through 10. QUESTION: "At that time, did you ever consider that there might be cephalopelvic disproportionment?" "I thought that might be the reason that she was unable to push the baby out." Then the question was: "Explain to me in layman's term what that is." "Well, the baby was not coming down despite her efforts, so either she was fatigued to the point of not being able to complete the job of delivery or else the baby was too big to come through the pelvis that was available; therefore, the trial of forceps" 

BY THE COURT: Whose deposition is that?

BY MR. LISTON: That's Dr. Kellum's.

BY MR. JOHNSON: Judge, they took that in October of '90. They've taken all my experts. Now they want to come in after my case is closed and say "oh, but here's the new theory of the case." And I highly object to that.

BY THE COURT: All right. I'm ready to rule. Both parties, the plaintiffs and the defendants have rested their case, and in this portion, the plaintiffs have made a motion to amend their Complaint pursuant to Mississippi Rules of Civil Procedure 15-B to conform to the evidence.
The Court finds that the motion will be denied. The issue in which the plaintiffs seek to amend the complaint is an issue that could have been brought up earlier, should have been brought up prior to the case being tried today, but particularly, should have been brought up as a theory of the case based on interrogatories that were propounded to the plaintiffs by defendants. It will be highly prejudicial in the Court's opinion to grant the motion when the defendants have rested their case and have not put on any proof or it was not indicated to them that they needed to put on proof to respond to this particular issue. The evidence is in, the Court will not at this stage of the proceeding allow this issue to be made a part of the trial so that other witnesses will have to be brought in to further prolong this trial. So the motion, therefore, will be denied. Anything further?
The Appellants offer three reasons why the trial court erred, including: (1) that the issue was tried by implied consent, (2) that the Defendants failed to make a timely objection that the testimony was outside the pleadings when the evidence which opened the door to the new theory was offered, and (3) that Rule 15(b) of the Mississippi Rules of Civil Procedure allows for such amendments.
In their brief, the Appellees note that the issue was specifically denied during interrogatories:

*1283 INTERROGATORY NO. 2: What do you contend to be the medical cause of the intrauterine hypoxia with subsequent metabolic acidosis which you stated in your answer to Interrogatory No. 5 of the First Set of Interrogatories was the cause of Lucas McCarty's medical problems?

ANSWER: The cause of Lucas' medical problems is the excessive force, both compression and traction, applied by Dr. Kellum in his attempted forceps delivery which resulted in injury to the gray and white matter of Lucas' brain. We do not now contend that Lucas suffered from metabolic acidosis.
At another point in the trial, Mr. Liston, counsel for the Plaintiffs, specifically denied that the Plaintiffs were attempting to address new theories in the case. The Appellees challenge the notion that the issue was tried by implied consent since they contend they tried to limit the issues of negligence at every stage of litigation.
Mississippi Rules of Civil Procedure 15(b) allows for the pleadings to be amended at any time, even after the judgment. Rule 15(b) further expresses that an amendment to the pleadings shall be done "freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in the maintaining of his action or defense upon the merits." The comment to Miss.R.Civ.P. 15(b) states, "In practice, an amendment should be denied only if the amendment would cause actual prejudice to the opposite party."

Standard of Review
"Motions for leave to amend are left to the sound discretion of the trial court. This Court reviews such determinations under an abuse of discretion standard and unless convinced that the trial judge abused his discretion, we are without authority to reverse." Frank v. Dore, 635 So.2d 1369, 1375 (Miss. 1994) [citations omitted]. "Proposed amendments have been liberally permitted throughout Mississippi legal history and are encouraged under Miss.R.Civ.P. 15; however, `[u]nless we are convinced that the trial judge abused his [judicial] discretion, we are without authority to reverse.'" Simmons v. Thompson Machinery of Mississippi, Inc., 631 So.2d 798, 800 (Miss. 1994) (upholding denial of motion to amend and citing Parker v. Mississippi Game and Fish Comm'n, 555 So.2d 725, 730 (Miss. 1989)).
(1) Was the issue tried by implied consent?

(2) Did the Defendants fail to make a timely objection that the testimony was outside the pleadings when the evidence which opened the door to the new theory was offered?

In the present case, the facts support the trial court's decision to deny the motion to amend. While we do agree that issues not raised in the pleadings, may be tried by implied consent pursuant to Miss. R.Civ.P. 15(b), we do not agree with the Appellants' argument that the issue concerning the trial of forceps was tried by the implied consent of the parties. "A finding that an issue was tried by implied consent depends upon whether the parties recognize that a new issue was being litigated at trial. [citation omitted]. Where the questions asked or the evidence presented at trial are relevant to the issues actually raised in the pleadings, trial by implied consent will not be found." Setser v. Piazza, 644 So.2d 1211, 1217 (Miss. 1994).
The Appellants contend that the relevant testimony came from the Appellees' own witnesses through cross-examination of Dr. Garland Anderson, who agreed that forceps are "contraindicated where there is cephalopelvic disproportion", and testimony from Dr. Helen Barnes, who agreed that forceps are "not applied where a physician thinks there is cephalopelvic disproportion." At trial, the deposition of Dr. Kellum, taken on October 10, 1990, was partially read to the jury with Mr. Lancaster reading the questions and Dr. Kellum reading his answers. The following colloquy occurred:

BY MR. LANCASTER: At that time did you ever consider that there might be cephalopelvic disproportion?

*1284 BY DR. KELLUM: I thought that might be the reason that she was unable to push the baby out.

BY MR. LANCASTER: And explain to me in layman's term what that is.

BY DR. KELLUM: Well, the baby was not coming down despite her efforts. So either she was fatigued to the point of not being able to  to complete the job of delivery, or else the baby was too big to come through the pelvis that was available, therefore, the trial of forceps.

BY MR. LANCASTER: What type of evaluation did you perform to determine the capacity of her pelvis to permit the delivery of the fetus?

BY DR. KELLUM: Clinical evaluation.

BY MR. LANCASTER: Tell us what you did and what you found.

BY DR. KELLUM: When we do clinical pelvimetry, we examine the diameters of the pelvis, the diagonal conjugate, and the space between the ischial spines. I felt that there was adequate room with the evaluation of those diameters.
The Appellants contend that Dr. Kellum had the opportunity to object; and, since he did not object, they should not be barred from the application of Rule 15(b).
At trial, the Defendants did strongly object stating, "I would just like to renew my objection which I previously made regarding Dr. Alexander testifying about now we hear we're supposed to monitor the baby during the pull, which is no where in his deposition. I asked him in one, two, three fraction to tell me what his opinions were and what he was relying on and that was simply not in here, that the baby should be monitored between the pulls." The court below sustained the objection, and Plaintiffs' counsel proffered that the doctor would have testified that there are known risks to trial of forceps and delivery by forceps.
We believe that the present case is of the exact nature anticipated in Setser, wherein the Court found that when evidence is "relevant to the issues actually raised in the pleadings, trial by implied consent will not be found." Setser v. Piazza, 644 So.2d 1211, 1217 (Miss. 1994). Although it is true that the defense did not object during cross-examination to the questions set out above, it cannot be said the issue was tried by implied consent. The questions and specific testimony were supportive of the pleadings asserted in the original complaint. For this reason, we are unable to agree that the defense should have noticed the new theory of recovery or that they consented by implication that the specific testimony was to be supportive of a new or different theory than the theory set out in the pleadings. Rule 15(b) requires that the issue be tried by express or implied consent of the parties. Accordingly, we affirm the denial of the motion to amend the pleadings. The complete testimony of Dr. Alexander and Dr. Barnes, and the deposition of Dr. Kellum in regard to the "contraindication of forceps" if CPD was present, was before the jury for consideration. The closing arguments are not part of the record, and we do not know if any argument was made concerning this testimony. The testimony of the doctors is relevant for its explanation of the allegations as set out in plaintiff's interrogatory previously discussed previously in this opinion.
Because we find that the issue was not tried by implied consent, and affirm the denial of the motion to amend under Rule 15(a), it is unnecessary for the Court to address at great length whether the motion to amend under Rule 15(b) should have been granted.
The trial court has the discretion to decide whether an amendment to the pleadings should be granted, and when the amendment is offered at the end of trial, the potential for prejudice to the nonmovant exists.
Freedom to grant leave to amend when justice so requires, as provided by the [Mississippi Rules of Civil Procedure], diminishes as the litigation progresses. Since prejudice to the opposing party is the key factor governing the court's discretion in granting leave to amend a pleading, the court will ordinarily refuse to grant such permission where the motion comes so late and in such circumstances *1285 that the right of the adverse party will necessarily be prejudicially affected.
61A Am.Jur.2d Pleadings § 315 (1981) (emphasis added).[1] It appears to this Court that the timing of the motion to amend the pleadings was desperately late and potentially prejudicial to the Defendant. In keeping with the cases which have held that the motion to amend was properly denied or erroneously granted, we conclude that had the motion been granted, it would have resulted in undue prejudice to the Defendant.[2]

II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN LIMITING THE SCOPE OF PLAINTIFFS' INQUIRY ON EXPERT WITNESSES' DEPOSITIONS TO THOSE MATTERS SPECIFIED IN RULE 26(b)(4)(A)(i), MISSISSIPPI RULES OF CIVIL PROCEDURE AND SPECIFICALLY PROHIBITING INTERROGATION AS TO MATTERS INVOLVING THE EXPERT'S POTENTIAL INTEREST, BIAS AND/OR QUALIFICATIONS.
On April 5, 1991, the Plaintiffs moved for an Order allowing the depositions of all experts pursuant to Miss.R.Civ.P. 26(b)(4)(A)(ii). The Defendants opposed this motion, not wanting to go to the expense of numerous expert witness depositions, with the trial only a few months away. On May 31, 1991, the trial court ordered that either party could take the deposition of any expert listed by the other side. The court limited the scope of the deposition to the information which is required by this Court's rules to be disclosed under Rule 26(b)(4), but did not allow inquiry into bias, interest, or prejudice of any of the experts. The Plaintiffs filed a motion to reconsider which was denied on June 22, 1991. The trial began August 19, 1991.
The Appellants contend that the case should be reversed because the limitation imposed by the trial court effectively hampered their ability to discover information necessary to cross-examine these crucial witnesses.
The Appellees acknowledge that the testimony of these witnesses is critical; however, they assert that the trial court properly exercised its discretion given the circumstances, i.e., that the timing of the depositions made it necessary to limit the deposition content.
The law within this jurisdiction allows a trial court "wide" and "considerable" discretion that is not to be disturbed unless this Court finds that there has been an abuse of the trial court's discretion. See, e.g., Dawkins v. Redd Pest Control Co., Inc., 607 So.2d 1232, 1235 (Miss. 1992); Palmer v. Biloxi Regional Medical Center, Inc., 564 So.2d 1346, 1368 (Miss. 1990); Clark v. Mississippi Power Co., 372 So.2d 1077, 1080 (Miss. 1979); and Harkins v. Paschall, 348 So.2d 1019, 1022 (Miss. 1977).
This Court has also expressed that the trial court should allow liberal cross-examination of experts regarding bias, interest, and prejudice in medical negligence *1286 cases. In Hall v. Hilbun, 466 So.2d 856, 875 (Miss. 1985), the Court determined that, "[l]iberal cross-examination regarding bias, interest, and previous experience as an expert in medical malpractice cases should be allowed... ." Additionally, Miss.R.Evid. 616 reads:
For the purpose of attacking the credibility of a witness, evidence of bias, prejudice, or interest of the witness for or against any party to the case is admissible.
"Rules of discovery are to prevent trial by ambush. In no other area is a litigant more vulnerable to ambush than a plaintiff in a malpractice action against a member of some profession." Nichols v. Tubb, 609 So.2d 377, 384 (Miss. 1992), cert. denied, ___ U.S. ___, 114 S.Ct. 63, 126 L.Ed.2d 33 (1993). Both parties eagerly acknowledge that the testimony of medical experts is crucial. It would seem to be a basic requirement that before a party can be afforded liberal cross-examination of an expert witness at trial, that party must be afforded the opportunity to discover a crucial expert's bias. This leads to the Appellant's assertion that restricting discovery into interest and bias was necessarily an abuse of discretion and reversible error. "[W]here limitations on discovery are improvidently ordered or allowed and important information is denied, a litigant reversal will obtain." Dawkins, 607 So.2d at 1235. In Dawkins the guidelines to be followed in determining whether there was an abuse of discretion were enumerated as follows:
[A]t trial court's discretion in the discovery area, is generally guided by the principles that (a) the court follow the general policy that discovery be encouraged, (b) limitations on discovery should be respected but not extended, (c) while the exercise of discretion depends on the parties' factual showings disputed facts should be construed in favor of discovery, and (d) while the importance of the information must be weighed against the hardships and cost of production and its availability through other means, it is preferable for the Court to impose partial limitations on discovery rather than an outright denial. Any record which indicates a failure to give adequate consideration of these concepts is subject to attack of abuse of discretion, regardless of the fact that the order shows no such abuse on its face.
Dawkins, 607 So.2d at 1236. Finally, the Dawkins court held that erroneous denial of discovery is ordinarily prejudicial in the absence of circumstances showing it to be harmless. This could be doubly so where the case involves medical expert testimony.
It appears that the trial court entered its restrictive order with the intent to shepherd the parties toward trial. After all, the trial took place almost 11 years after the birth of Lucas. Even with the understanding that the trial court has the discretion to limit discovery orders, the possibility exists that the Plaintiffs were denied access to potentially important and discoverable information. The Plaintiffs wanted an opportunity to explore the area of bias, prejudice and interest before trial. However, the record only contains the depositions of Dr. Kellum, whose testimony was read in part to the jury, and Dr. Wilroy, whose deposition was videotaped and shown to the jury. Thus, we are unable to ascertain what, if any, information the Plaintiffs were denied. The Plaintiffs make no proffer or suggestion of testimony that they wished to elicit, or areas that they wished to explore. Indeed, the full depositions are not made part of the record preserved for this Court. Conversely, during cross-examination, the Appellants were in no way hampered from exploring the credibility, bias, or interest of the witnesses.
This Court concludes that the discovery limitation precluded Appellants from discovering potentially valuable (and still unknown) information regarding the experts. However we are unable to hold that such limitation amounts to reversible error. Upon review of the record before this Court, we are unable to fully and accurately determine the harm due to the fact that certain portions of the deposition were not designated. Therefore, we find the error to be harmless and affirm the lower court's ruling.

*1287 III. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING JURY INSTRUCTIONS D-3 AND D-5 OVER THE OBJECTION OF THE PLAINTIFFS THAT THE INSTRUCTIONS WERE ABSTRACT STATEMENTS OF LAW AND NOT FACT SPECIFIC, FAILED TO SET FORTH A STANDARD WHICH WOULD ENABLE THE JURY TO DETERMINE IF THE DEFENDANT KELLUM ACTED AS A MINIMALLY COMPETENT OBSTETRICIAN AND ALLOWED THE JURY FREEDOM TO SEARCH OUT OR "ROVE THE WATERFRONT" IN ORDER TO FIND THAT THE DEFENDANT KELLUM ACTED AS A MINIMALLY COMPETENT OBSTETRICIAN AT THE TIMES IN QUESTION.

Instruction D-3 reads as follows:
The Court instructs the jury that the word "negligence" as used in these instructions means the doing of some act which a minimally competent obstetrician treating a patient would not have done under the same or similar circumstances or the failure to do some act which a minimally competent obstetrician would have done under the same or similar circumstances. Therefore, if you believe that, during his care and treatment of Mrs. McCarty and the delivery of her baby, Dr. Kellum acted as a minimally competent obstetrician would have acted when faced with the same or similar circumstances, it is your duty to return a verdict for the defendants Roy Bradley Kellum, M.D. and Jackson OB-GYN Associates, P.A.
(emphasis added). Instruction D-5 reads as follows:
The Court instructs the jury that physicians and surgeons are not guarantors of the success of any medical treatment provided to a patient. Likewise, a physician is not automatically liable for the occurrence of an undesirable result. A doctor is only required to provide a patient with that degree of care, skill, and diligence that would be practiced in the same or similar circumstances by a minimally competent physician in the same area of medicine. Therefore, if you find from a preponderance of the evidence that, during his care, treatment, and delivery of Lucas McCarty, Dr. Kellum provided him with that degree of care, skill and diligence which would have been provided by a minimally competent obstetrician, then you must return a verdict for Roy Bradley Kellum, M.D. and Jackson OB-GYN Associates, P.A.
Appellants assert that the instructions clearly do not relate to the facts shown by the evidence relating to the standard of care issue involved in this case. Appellants further contend that the instructions failed to give the jury any guide in resolving the ultimate issue of whether Dr. Kellum deviated from the requisite standard of care. Thus, the Appellants pray for a reversal on this issue.
The Appellees counter that: (1) the instructions are correct statements of the law; (2) had the instructions been more specific, they may have been more confusing; and (3) the instructions, when read as a whole, correctly instructed the jury.
"Instructions should be tied to the specific facts of the case and when given merely in the abstract, may be grounds for error." T.K. Stanley, Inc. v. Cason, 614 So.2d 942 (Miss. 1992); see also, Estate of Lawler v. Weston, 451 So.2d 739, 741 (Miss. 1984). "Abstract instructions on legal principles unrelated to facts and issues set out in the instructions are dangerous, because, although they may be correct in principle, they require legal training to properly interpret." Furthermore, "[t]hey tend to mislead the jury." Freeze v. Taylor, 257 So.2d 509, 511 (Miss. 1972).[3]

*1288 The test to determine whether or not an instruction is abstract is to determine whether or not the instruction relates to facts shown by the evidence on the issues involved in the case. If an instruction merely relates a principle of law without relating it to an issue in the case, it is an abstract instruction and should not be given by the Court.
Id. Even though the instructions do announce correct law the Instructions D-3 and D-5 were obviously not made applicable to the particular facts.[4] Mere definition of the standard of care does not direct the jury to do anything. T.K. Stanley, Inc. v. Cason, 614 So.2d 942, 952 (Miss. 1992). We admonished the bench and bar that the use of an abstract instruction without application of the specific facts of the case under consideration invites reversible error. Harkins v. Paschall, 348 So.2d 1019, 1023 (Miss. 1977). Although we are inclined to agree that D-3 and D-5 alone were inadequate, in that they failed to present the jury with facts and standards by which the jury was to evaluate the evidence, our review does not begin and end with the contested instructions. In keeping with our practice of reviewing instructions in toto, we find that the other instructions to the jury did provide the jury with appropriate facts and specific standards. Therefore, we find the issue to be without merit.

CONCLUSION
After thorough and careful review, we affirm the judgment entered in favor of the Appellees.
AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, BANKS, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
McRAE, J., not participating.
NOTES
[1] In Broadhead v. Terpening, 611 So.2d 949, 953 (Miss. 1992), the Court noted that the trial court also has the discretion to grant a continuance to the nonmovant party to allow him to meet the evidence, if that party objects and demonstrates prejudice to the court.
[2] See Shipley v. Ferguson, 638 So.2d 1295, 1300 (Miss. 1994) (noting that nonmoving party would not have been alerted that a new issue was being introduced when chancellor asked questions of witness and holding that issue was not tried by implied consent); Hester v. Bandy, 627 So.2d 833, 839-40 (Miss. 1993) (reversing grant of motion to amend permitted at conclusion of three-day trial on grounds that change seriously prejudiced nonmoving party); Natural Mother v. Paternal Aunt, 583 So.2d 614, 617 (Miss. 1991) (upholding denial of motion to amend sought two days before trial and stating, "Clearly, the grant of the petition would have prejudiced [the nonmoving party] who at this juncture was poised and ready for trial on the petition for adoption and was unaware of any other issues against which she would have to defend."); William Iselin and Co., Inc. v. Delta Auction and Real Estate Co., 433 So.2d 911 (1983) (finding motion to amend was properly denied due to additional burdens of discovery, preparation, and expense and lack of time to investigate and become acquainted with new matter in the amended pleadings).
[3] The instruction granted in Freeze read, "The Court instructs the jury for the defendant that liability rest not upon danger but upon negligence." Id. at 511.
[4] In Estate of Lawler v. Weston, 451 So.2d 739, 741 (Miss. 1984), the Court found, "[The instruction] is a correct recitation of the law but [it] is not, however, applied to the specific facts of the case and as such [it] is also merely an abstract principle of law." Id. (citations omitted). The Court held that the instruction was properly refused. Id.