# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CA-00889-SCT

*JACKIE RAY ROBISON*

*v.*

*NANCY FAYE ROBISON*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/17/97 |
| TRIAL JUDGE: | HON. THOMAS WRIGHT TEEL |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | M. CHANNING POWELL |
| ATTORNEY FOR APPELLEE: | CAROL L. HENDERSON |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 10/22/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/12/98 |

**BEFORE SULLIVAN, P.J., MILLS AND WALLER, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Jackie and Nancy Robison were married on January 30, 1976. During the course of their twenty-one-year marriage they had one daughter together, Ashley, who was thirteen at the time of the hearing. On April 5, 1996, Jackie moved out of the marital home. He testified that he began living with his girlfriend, Debbie Catania in early July, 1996, and admits to having a sexual relationship with Debbie beginning at that time. Jackie filed for divorce on July 18, 1996, in the Harrison County Chancery Court, and Nancy filed her counterclaim for divorce in her answer.

¶2. Based in part upon Jackie's adultery, Chancellor Thomas Wright Teel awarded Nancy a divorce upon grounds of habitual cruel and inhuman treatment and custody of Ashley. Jackie appeals to this Court from the chancellor's decree, assigning as error his finding of habitual cruel and inhuman treatment, amendment of the pleadings, award of lump sum and periodic alimony, award of attorney's fees, restriction of overnight visitation, and failure to attach the standard visitation schedule to the divorce decree.

## STATEMENT OF THE LAW

### Standard of Review

¶3. "The chancellor's decree of divorce will not be reversed unless it is manifestly wrong as to law or

fact." ***Benson v. Benson***, 608 So.2d 709, 710-11 (Miss. 1992). We find no manifest error in the divorce judgment and therefore affirm the chancellor's decision in this case. However, because the trial court inadvertently failed to attach the standard visitation schedule to the divorce decree, we remand this case to the Harrison County Chancery Court for the limited purpose of incorporating the visitation schedule.

## I.

## THE CHANCERY COURT ERRED IN AWARDING NANCY FAYE ROBISON A DIVORCE ON THE GROUNDS OF HABITUAL CRUEL AND INHUMAN TREATMENT.

¶4. Jackie complains that the evidence at trial did not support a finding of habitual cruel and inhuman treatment, because Nancy testified that she was not afraid of Jackie and that Jackie never hit her. He also asserts that no causal connection was established between his treatment of Nancy and the couple's separation. However, this Court has held that conduct both before and after the separation may be considered in determining whether sufficient evidence was presented to support the chancellor's award of divorce upon grounds of habitual cruel and inhuman treatment. ***Bias v. Bias***, 493 So.2d 342, 345 (Miss. 1986).

¶5. "[H]abitual cruel and inhuman treatment could be established only by a continuing course of conduct on the part of the offending spouse which was so unkind, unfeeling or brutal as to endanger, or put one in reasonable apprehension of danger to life, limb or health, and further, that such course of conduct must be habitual, that is, done so often, or continued so long that it may reasonably be said a permanent condition." ***Wilson v. Wilson***, 547 So.2d 803, 805 (Miss. 1989). "Our cases require more than mere unkindness, rudeness, or incompatibility to support the granting of a divorce on the ground of 'cruel and inhuman treatment.'" ***Brooks v. Brooks***, 652 So.2d 1113, 1124 (Miss. 1995). "On the other hand, habitual ill-founded accusations, threats and malicious sarcasm, insults and verbal abuse may cause such mental suffering as to destroy health and endanger the life of an innocent spouse." ***Chamblee v. Chamblee***, 637 So.2d 850, 859 (Miss. 1994) (*quoting* ***Kergosien v. Kergosien***, 471 So.2d 1206, 1210 (Miss. 1985)). "This Court has held that impact of the conduct on the plaintiff is crucial, thus we employ a subjective standard." ***Faries v. Faries***, 607 So.2d 1204, 1209 (Miss. 1992).

¶6. Jackie's emotional and mental abuse resulting in Nancy's depression were sufficient for an award of divorce on grounds of habitual cruel and inhuman treatment. Nancy testified that Jackie told her that he couldn't stand to be around her and that there was nothing she could do to make herself desirable to him. He kept late hours and talked about having to engage in sexual relations with women at work to advance his career. Jackie confirmed that the couple never had sex anymore. Nancy stated that the last three times they did have sex, Jackie threw her off of the bed. Nancy also said that Jackie continually criticized her appearance, never took her anywhere, and showed absolutely no affection towards Nancy. She also testified regarding his controlling nature, how Jackie would restrict her social life to the point of telling her who she could be friends with, what social functions she could attend, and where and under what circumstances she could go anywhere. After the separation, Jackie admittedly moved in with his girlfriend and began an adulterous relationship with her. He was neglectful of his family to the point that they could not afford groceries, and Nancy's co-workers had to hold a food drive for her and Ashley. Jackie did not deny any of Nancy's

allegations, but did say that Nancy unjustly accused him of having an affair while they were still living together. At the time of trial, Nancy was being treated for depression and anxiety, taking both Paxil and Ativan. We find that Jackie's neglect and verbal and emotional abuse of Nancy, resulting in her needing treatment for depression, were sufficient to support a finding of habitual cruel and inhuman treatment.

## II.

### THE CHANCERY COURT ERRED IN ALLOWING NANCY FAYE ROBISON TO AMEND HER PLEADINGS AFTER SUSTAINING OBJECTIONS TO LEADING QUESTIONS AND AFTER THE TESTIMONY OF ONLY ONE WITNESS AND BEFORE THE CLOSING OF THE CASE-IN-CHIEF OF NANCY FAYE ROBISON.

¶7. Over Jackie's objection, Judge Teel allowed Nancy to amend her complaint to conform to the evidence already presented during her testimony at trial. Jackie alleges that the trial court's ruling on this matter was error and that the amendment unfairly prejudiced his case, because it added new theories of recovery for which he had no time to prepare a defense.

¶8. The procedure for amending pleadings to conform to the proof is governed by Rule 15(b) of the Mississippi Rules of Civil Practice, which allows the trial court "to be liberal in granting permission to amend when justice so requires" unless the objecting party shows "that the admission of such evidence would prejudice him in the maintaining of his action or defense upon the merits." Miss. R. Civ. P. 15(b). "The court may grant a continuance to enable the objecting party to meet such evidence." *Id*. Rule 2.09 of the Uniform Chancery Court Rules similarly allows a continuance if the opposing party "is not prepared to meet" any matter amended in the pleadings. U.C.C.R. 2.09.

¶9. Jackie cites *McCarty v. Kellum*, 667 So.2d 1277, 1284 (Miss. 1995), in support of his position. The *McCarty* case is easily distinguishable from the issue here. In this case, Nancy was allowed to amend the pleadings in the middle of her own testimony before Jackie was called as a witness, whereas in *McCarty* the plaintiff attempted to amend the pleadings to add an additional theory of negligence after the close of the defendant's case. *Id*. at 1281-82. The only contested issues in the amended pleadings here were the increased requests in the amount of lump sum and periodic alimony. Jackie had to put on the same evidence to defend the request for alimony, regardless of the amount in the pleadings. He had the opportunity to sufficiently present his side of the monetary issues once he took the stand after the amendment, and could have requested a continuance if he felt that he needed additional time to prepare. We hold that the amendment to the pleadings allowed in this case did not prejudice Jackie so as to require reversal.

## III.

### THE CHANCERY COURT'S AWARD OF LUMP SUM ALIMONY, PERIODIC ALIMONY AND OTHER SUPPORT IN THE AGGREGATE WAS SO EXCESSIVE AS TO CONSTITUTE AN ABUSE OF DISCRETION.

¶10. Jackie contends that the chancellor abused his discretion in awarding Nancy lump sum alimony and Cobra insurance payments. He maintains that the court-ordered payments result in his monthly expenses exceeding his income. Jackie also alleges that the trial court used the award of alimony as

punishment, contrary to Mississippi law.

¶11. In reviewing the propriety of a chancellor's award of lump sum and/or periodic alimony, this Court has set out the following factors for consideration:

> (1) the existence of substantial contributions to the accumulation of wealth of the payor either by quitting a job to become a housewife or by assisting in the payor's business, (2) the length of the marriage, (3) the lack of separate income or the existence of comparatively meager income for the recipient, and, (4) lack of financial security in the absence of an award.

*Crowe v. Crowe*, 641 So.2d 1100, 1103 (Miss. 1994). "Disparity of the separate estates has continued to be the most compelling factor." *Sarver v. Sarver*, 687 So.2d 749, 757 (Miss. 1997). Costs associated with starting a new life after the divorce may be considered in an award of lump sum alimony. *Id*. "[T]he equitable division of property, awards of alimony, whether lump-sum or periodic, and all other obligations imposed upon a payor spouse should all be considered together by the chancellor." *Brooks v. Brooks*, 652 So.2d 1113, 1121 (Miss. 1995).

¶12. Jackie's take home pay after expenses was $759 before the divorce decree when he was making $470 temporary support payments to Nancy. Chancellor Teel ordered Jackie to pay Nancy $350 per month in child support, $250 per month for lump sum alimony for forty months, $250 per month in periodic alimony, and to keep up her Cobra payments for as long as possible. The parties agree in their briefs that Jackie's total monthly payments to Nancy amount to $975. The court-ordered payments leave Jackie with approximately $254 per month after all expenses. Jackie's assertion that Judge Teel's order requires him to make payments in excess of his monthly income is simply not supported by the record.

¶13. Nancy was making approximately $520 per month with $2,438 in monthly expenses. Adding the total support payments to Nancy's monthly income, she will still be left with a monthly deficit of $943, and will presumably need to seek other, more lucrative employment. Jackie's portrayal of Nancy's financial status in his brief is simply false. Each party was awarded the personal property in their possession, including the cars. Both the house and the adjacent lot are to be sold to satisfy their debts. Unfortunately, there isn't enough money to go around in this case, as evidenced by the parties' filing for bankruptcy on June 6, 1996. However, considering the factors set out above, we find that the chancellor's award of periodic and lump sum alimony in this case was necessary for Nancy to establish financial security for herself and Ashley.

## IV.

### THE CHANCERY COURT ERRED IN ORDERING JACKIE RAY ROBISON TO PAY FIVE HUNDRED DOLLARS IN ATTORNEY'S FEES FOR NANCY FAYE ROBISON.

¶14. Jackie complains that the trial court abused its discretion in awarding Nancy $500 in attorney's fees, because Nancy failed to present any evidence of her inability to pay or the computation of her attorney's expenses. The determination of an award for attorney's fees is within the sound discretion of the trial court. *McKee v. McKee*, 418 So.2d 764, 767 (Miss. 1982). An award of attorney's fees is appropriate in a divorce case where the requesting party establishes an inability to pay. *Gambrell v. Gambrell*, 650 So.2d 517, 521 (Miss. 1995). At trial, Nancy testified that she had to borrow money

to pay $1,575 in legal fees to cover the expenses associated with multiple court visits, filings, discovery, and approximately fifteen meetings with her attorney. Nancy's testimony regarding her legal expenses, her attorney's efforts as of trial, and her having to borrow money to pay her attorney were sufficient to support the award of attorney's fees in this case.

## V.

### THE CHANCERY COURT ERRED IN RESTRICTING THE OVERNIGHT VISITATION OF THE MINOR CHILD WITH JACKIE RAY ROBISON WHILE IN THE PRESENCE OF HIS GIRLFRIEND.

¶15. Jackie asserts that the trial court erred in ordering that Jackie could not have overnight visitation with his daughter at the home where he lives with his girlfriend. He argues that because the court made no finding of fact regarding adverse circumstances, the visitation restriction was improper, because an extramarital relationship is not a per se adverse circumstance. "'The chancellor is charged with the responsibility to protect the children and determine what visitation is in their best interest; great deference is given to the chancellor's decision on these matters.'" *Chamblee v. Chamblee*, 637 So.2d 850, 861 (Miss. 1994) (*quoting**Newsom v. Newsom*, 557 So.2d 511, 517 (Miss. 1990)). In *Dunn v. Dunn*, 609 So.2d 1277 (Miss. 1992), we held that it was error for the chancellor to prohibit the presence of the father's lover during visitation with his children, because there was no evidence of any detriment to the children. *Dunn*, 609 So.2d at 1286. However, this case is distinguishable from *Dunn* based upon the undisputed testimony that Ashley was traumatized by visitation with Jackie and his girlfriend, suffered stomach problems after visitation with them, and was in need of psychological treatment for her depression and suicidal threats. We find that the visitation restriction was within the chancellor's discretion in this case.

## VI.

### THE CHANCERY COURT ERRED IN FAILING TO SPECIFY STANDARD VISITATION AND A COPY OF THE CHANCELLOR'S STANDARD VISITATION WAS NOT ATTACHED TO THE JUDGMENT OF DIVORCE AS STATED THEREIN.

¶16. In his Judgment of Divorce, Judge Teel stated that a copy of the standard visitation schedule would be attached to the judgment, but the trial court failed to attach the schedule. Based upon the record before this Court, it appears that Judge Teel's failure to attach his standard visitation schedule to the divorce decree was merely a clerical error. We therefore remand this case to the chancery court to correct the judgment by attaching the visitation schedule.

### CONCLUSION

¶17. Although Jackie has failed to present any assignments of error on appeal requiring reversal of the divorce decree in this case, Judge Teel's omission of the standard visitation schedule warrants remanding the case to the Chancery Court of Harrison County to correct this oversight.

¶18. **JUDGMENT OF DIVORCE AFFIRMED. CASE REMANDED TO THE HARRISON COUNTY CHANCERY COURT FOR THE LIMITED PURPOSE OF INCORPORATING THE STANDARD VISITATION SCHEDULE.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**