752 So.2d 422 (1999)
MERCHANTS ACCEPTANCE, INC., Appellant,
v.
Bertha B. JAMISON, Appellee.
No. 1999-CA-00159-COA.
Court of Appeals of Mississippi.
November 23, 1999.
*423 Maria M. Cobb, Biloxi, Attorney for Appellant.
Nancy Allen Wegener, Clarksdale, Attorney for Appellee.
BEFORE McMILLIN, C.J., MOORE, AND THOMAS, JJ.
MOORE, J., for the Court:
¶ 1. Following a bench trial, the Circuit Court of Tallahatchie County ruled that Appellant Merchants Acceptance, Inc. failed to prove it delivered a set of encyclopedias to Appellee Bertha B. Jamison, thereby relieving Jamison from the duty of payment under the contract between the parties, and ordering Merchants Acceptance, Inc. to refund Jamison's $100 deposit and pay court costs. Merchants Acceptance, Inc. appeals the judgment of the Tallahatchie County Circuit Court, citing the following issues:
I. WHETHER THE TRIAL COURT ERRED IN RULING THAT THE SHIPPING INSTRUCTIONS LOCATED IN THE RETAIL INSTALLMENT CONTRACT WERE BINDING UPON APPELLANT, AND THEREBY CLASSIFYING THE CONTRACT AS A "DESTINATION CONTRACT" AS OPPOSED TO A "SHIPMENT CONTRACT;"
II. WHETHER THE TRIAL COURT COMMITTED MANIFEST ERROR IN MAKING A CREDIBILITY DETERMINATION WITH REGARD TO APPELLEE'S TESTIMONY; AND
III. WHETHER THE TRIAL COURT ERRED IN ALLOWING APPELLEE TO AMEND HER ANSWER TO ASSERT A COUNTERCLAIM DURING THE TRIAL.
Finding no error, we affirm.

STATEMENT OF FACTS
¶ 2. February 19, 1996, Appellee Bertha Jamison contracted to purchase a set of encyclopedias from Encyclopedia Britannica for $1,652.08, including tax and a $95 shipping charge. Jamison made a $100 down payment and signed a document entitled "Britannica Revolving Credit AgreementRetail Installment Contract" ("Contract"), in which she agreed to pay $57 per month until fully paid, beginning with an installment due May 1, 1996. The Contract specified Jamison's street address as the location where the encyclopedias were to be shipped.
¶ 3. March 6, 1996, Encyclopedia Britannica assigned the Contract to Appellant Merchants Acceptance, Inc. ("Merchants"). Elisa Cranmer, a Merchants employee, telephoned Jamison regarding her purchase of encyclopedias. This conversation was tape-recorded with Jamison's permission. Cranmer told Jamison that Merchants would be sending payment information to Jamison's post office box and confirmed Jamison's post office box address. Cranmer also confirmed Jamison's street address. Cranmer informed Jamison that the encyclopedias would be shipped within three to four weeks. Nothing in the tape-recorded conversation *424 between Cranmer and Jamison indicated that the shipping terms of the contract were to be altered to ship the encyclopedias to Jamison's post office box.
¶ 4. At trial, Jamison testified that she never received the encyclopedias. A United Parcel Service ("UPS") tracking slip revealed that the encyclopedias were shipped to Jamison's post office box, not to her street address as specified in the Contract. The UPS tracking slip did not indicate whether the encyclopedias actually arrived at the post office box. When she received supplements to the encyclopedias, Jamison mailed them back to the company. The supplements were shipped to Jamison's post office box. She received a notification in her post office box from a postal employee that she had a package that was too large to fit in her box.
¶ 5. Other than the $100 deposit, Jamison did not make any payments on her Merchants account. Merchants began a collection campaign which consisted of telephone calls to inform Jamison of her delinquent status. Merchants's general manager, Kevin Hutchins, served as Merchants's corporate representative at trial. Through him some handwritten notes of a former Merchants employee, John Ferguson, were introduced as evidence of Merchants's communications with Jamison. Ferguson presumably took these notes contemporaneously with his telephone conversations with Jamison. Ferguson did not testify at trial. Over Jamison's objection, the trial court allowed Hutchins to read a typewritten interpretation of Ferguson's handwritten notes, and to testify regarding abbreviations that were contained therein. The typewritten document from which Hutchins read was prepared by a typist, who also did not testify at trial. This document was the typist's interpretation of Ferguson's handwritten notes.
¶ 6. Of interest is Ferguson's note dated June 3, 1996. Ferguson noted that Jamison telephoned Merchants on that date and stated that she did not receive the encyclopedias "on time." On June 17, Ferguson noted that Jamison: "[S]aid not paying sending books back." Jamison testified that she never received the encyclopedias. When asked to explain Ferguson's notation that she would send the books back, Jamison explained that she was referring to the two supplements she received. However, the supplements were sent after Jamison's conversation with Ferguson. Jamison then testified, under examination by her own attorney, that she told Ferguson that she would send the books back if she ever got them.
¶ 7. Hutchins admitted that he had no personal knowledge of the telephone conversations between Ferguson and Jamison, and that he never discussed Ferguson's notes with Ferguson. He acknowledged that he could not testify, with certainty, whether the notes represented everything said in the telephone conversations. Hutchins agreed that the shipping instruction, specifying shipment to Jamison's street address, was part of the Contract.
¶ 8. Jamison requested that the trial court allow her to amend her answer to the complaint by adding a counterclaim for tortious breach of contract, and a claim for M.R.C.P. 11 sanctions. Jamison also requested a refund of her $100 deposit, court costs, interest, and attorney fees. The trial court granted her leave to amend the complaint.
¶ 9. The trial judge acknowledged that Jamison contradicted herself at trial "on material points." However, the court ruled that Merchants did not prove by a preponderance of the evidence that Jamison actually received the encyclopedias. The court found Hutchins to be a credible witness; however, the court opined that Hutchins's personal knowledge of the relevant facts was limited. The trial court found that Hutchins's interpretation of handwritten, shorthand notes of an absent witness was evidence that "simply falls short of being of such nature and quality as to withstand the totality of Jamison's evidence."
*425 ¶ 10. Further, the court noted that Merchants admitted: (1) the shipping terms dictated shipment to Jamison's street address; (2) the shipping terms were part of the contract; and (3) the tracking document revealed that the encyclopedias were placed in transit to be shipped to Jamison's post office box. The court opined: "When Merchants chose to ship the books to an address other than the address reflected in the shipping instructions in the contract, it did so at its own peril."
¶ 11. The trial court dismissed Merchants's suit with prejudice, ordered Merchants to refund Jamison's $100 deposit, and taxed Merchants with court costs. The trial court did not find tortious breach of contract, and ruled that M.R.C.P. 11 sanctions were not warranted as alleged in Jamison's counterclaim; therefore, the court did not award attorney fees as requested in Jamison's counterclaim.

LAW AND ANALYSIS

I. DID THE TRIAL COURT ERR IN RULING THAT THE SHIPPING INSTRUCTIONS LOCATED IN THE CONTRACT WERE BINDING UPON APPELLANT?
¶ 12. When a contract for the sale of goods contemplates transportation of the goods by a commercial carrier, the seller of the goods fulfills its delivery obligation once it delivers the goods to the carrier if the contract does not require delivery to a particular location. Miss. Code Ann. § 75-2-509(1)(a). Under this situation, the risk of loss passes to the buyer when the seller delivers the goods to the carrier. Miss.Code Ann. § 75-2-509(1)(a). Merchants urges that the Contract in the present case was a "shipping" contract, as opposed to a "destination" contract; thus, warranting a finding that Merchants fulfilled its obligation to Jamison once it delivered the encyclopedias to UPS. However, since the delivery term in the Contract was specified as Jamison's street address, we find that it is unnecessary to delve into the case law describing the differences between "shipping" versus "destination" contracts.
¶ 13. Miss.Code Ann. § 75-2-503 (1972) provides:
(1) Tender of delivery requires that the seller put and hold conforming goods at the buyer's disposition and give the buyer any notification reasonably necessary to enable him to take delivery. The matter, time and place for tender are determined by the agreement and this chapter....
(emphasis added). In the case sub judice, the delivery term in the Contract specified that the encyclopedias were to be delivered to Jamison's street address. Merchants admitted that the delivery term was part of the Contract and further admitted that the UPS tracking slip clearly revealed that the encyclopedias were shipped to Jamison's post office box and not to her street address. The trial court properly ruled that the shipping instructions were binding on Merchants and that Merchants was required to prove delivery and receipt of the encyclopedias.[1] The risk of loss, therefore, remained with Merchants until the books were "duly so tendered as to enable [Jamison] to take delivery." Miss. Code Ann. § 75-2-509(1)(b).
¶ 14. Tender of delivery is a condition precedent to the buyer's duty to pay, unless the agreement between the parties dictates otherwise. Miss.Code Ann. § 75-2-507(1). *426 Since the Contract required Merchants to deliver the encyclopedias to Jamison's street address, Jamison is relieved from her contractual obligation to pay if she did not receive the encyclopedias.

II. DID THE TRIAL COURT ERR IN MAKING A CREDIBILITY DETERMINATION WITH REGARD TO MERCHANT'S TESTIMONY?
¶ 15. Merchants is aggrieved that the trial judge determined that Jamison's inconsistent testimony was more credible than its evidence. A trial judge, sitting as the trier of fact, is solely authorized to determine witness credibility. Mullins v. Ratcliff, 515 So.2d 1183, 1189 (Miss.1987). We will not reverse the trial court's findings of fact unless they are manifestly wrong. Id. See also Mississippi State Tax Comm'n v. Medical Devices, 624 So.2d 987, 989 (Miss.1993); Myers v. Blair, 611 So.2d 969, 971 (Miss.1992). This deferential standard of review applies to the findings of the circuit court sitting as the trier of fact in a bench trial. Kight v. Sheppard Bldg. Supply, Inc., 537 So.2d 1355, 1358 (Miss.1989). "This Court must examine the entire record and accept that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact...." Mullins, 515 So.2d at 1189 (citing Cotton v. McConnell, 435 So.2d 683, 685 (Miss.1983)).
¶ 16. In the case sub judice, the trial court did not consider Hutchins's testimony incredible; in fact, the trial judge ruled that his testimony was highly credible. The trial court found, however, that Hutchins's testimony was not based upon his personal knowledge, but instead on written shorthand notes of a witness who did not testify at trial. Based on this finding, the trial judge ruled that the quality of this evidence, compared with the totality of Jamison's evidence, was insufficient to "say with confidence that Merchants met its burden of proof."
¶ 17. To prevail at trial, Merchants had to prove, by a preponderance of the evidence, that Jamison received the encyclopedias. The only evidence that Jamison may have received the encyclopedias was two very brief entries in Ferguson's notes. Whether the notes came into evidence as admissions under M.R.E. 801(d)(2), or as business records under the M.R.E. 803(6) exception to the hearsay rule, the notes receive the same scrutiny as any other evidence. That Ferguson's notes may constitute admissions by Jamisonor business records over which Hutchins, the custodian of the records, may testifydoes not magically transform Ferguson's subjective notes into evidence that needs no explanation from a person with personal knowledge.
¶ 18. Jamison consistently denied that she received the encyclopedias and testified that she told Ferguson she had not received them. Hutchins, in the unfortunate position of interpreting handwritten shorthand notes of a person with whom he did not consult, could not testify that the notes reflected the entire conversations between Ferguson and Jamison. Ferguson opined that the notations that Jamison was "sending [the] books back" and that she didn't receive the books "on time" indicated that she actually received the books; however, he could not of his own personal knowledge testify that Jamison actually received the encyclopedias. Based upon Merchants's failure to provide a witness with personal knowledge or to submit any other evidence showing that it complied with the contractual delivery terms, this Court finds the trial court was not manifestly wrong in finding that Merchants's evidence was not sufficient to meet its burden of proving that Jamison received the encyclopedias.

III. DID THE TRIAL COURT ERR IN ALLOWING APPELLEE TO AMEND HER ANSWER TO ASSERT A COUNTERCLAIM DURING THE TRIAL?
¶ 19. M.R.C.P. 15 gives the trial judge liberal latitude in allowing parties to *427 amend their pleadings. McCarty v. Kellum, 667 So.2d 1277, 1283 (Miss.1995). Motions for leave to amend "are left to the sound discretion of the trial court." Id. We cannot reverse the trial court's decision to allow amendment absent an abuse of discretion by the trial court. Id. "In practice, an amendment should be denied only if the amendment would cause actual prejudice to the opposite party." M.R.C.P. 15 cmt.
¶ 20. In the case sub judice the trial court allowed Jamison to amend her pleadings by adding a counterclaim for tortious breach of contract, a claim for M.R.C.P. 11 sanctions, and for return of her $100 deposit and court costs. Jamison did not ultimately prevail on her tortious breach or M.R.C.P. 11 claims. Merchants was not, therefore, prejudiced by the addition of these claims in the counterclaim. Further, since Jamison requested return of her deposit and court costs in her answer, Merchants was not prejudiced by the addition of these claims in the counterclaim. We are not convinced the trial court abused its discretion in light of the lack of actual prejudice to Merchants; therefore, we are without authority to reverse.

CONCLUSION
¶ 21. The trial court was correct in determining that the Contract required delivery to Jamison's street address. Further, the trial court's finding of fact that Merchants's evidence was not based on personal knowledge and was not of the quality to satisfy its burden of proof, was not manifestly erroneous. Finally, since Merchants was not actually prejudiced by the trial court's allowing Jamison to amend her pleadings to assert a counterclaim, the trial court did not abuse its discretion in allowing the amendment. Finding no error, we affirm.
¶ 22. THE JUDGMENT OF THE TALLAHATCHIE COUNTY CIRCUIT COURT DISMISSING THE COMPLAINT WITH PREJUDICE AND AWARDING DEPOSIT AND COURT COSTS TO APPELLEE IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED AGAINST THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
NOTES
[1] The cases Merchants cited in support of its argument that it fulfilled its obligation to deliver the encyclopedias when it placed them with the carrier are not persuasive because neither specified the buyer's address as the place of delivery. The contract in Electric Regulator Corp. v. Sterling Extruder Corp., 280 F.Supp. 550 (D.Conn.1968) specified "F.O.B. Norwalk, Connecticut," the place of shipment not delivery, as the shipping term. The contract in Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 376 N.E.2d 548 (1978), did not specify shipping terms; therefore, it was presumed a "shipping" contract under the U.C.C. and the risk of loss passed to the buyer when the goods were delivered to the carrier.