The Mississippi Department of Human Services, hereinafter "DHS" or "the Department," appeals from a final judgment entered on June 9, 1992, by the Chancery Court of Bolivar County, Mississippi, granting DHS' Motion of Intervention while contemporaneously denying as moot its Motion For Blood Tests
and also, in the wake of plaintiffs' Motion Ore Tenus for a final judgment of dismissal, dismissing the matter with prejudice upon a finding of a negotiated settlement between the original parties to the action.
The original parties to the action were the plaintiffs, Betty Jean Banks and her three (3) minor children, and the defendant, Timothy A. Barnett, the putative father of Banks' children. Specifically, the chancellor dismissed the action with prejudice as to all rights of the plaintiffs (Ms. Banks and the minor children) and intervenor (the DHS) "[w]ith the exception of the Department's right with respect to the amount of any unpaid support obligation that accrued under lawful assignment to the extent of the amount of past assistance paid to Plaintiff by the Department which has not been reimbursed to the Department."
The underlying cause of action — that of paternity — was settled through the means of the doubtful claim statute, Miss. Code Ann. § 93-13-59. A negotiated settlement was reached by Ms. Banks and Mr. Barnett. The DHS was not a party to the guardianship procedure in which all claims between the original parties were decided, nor was it a party to the negotiations that preceded settlement.
The DHS contends on appeal (1) the chancellor erred when he granted the Department's motion of intervention while, at the same time and in the same instrument, dismissing the paternity and child support action with prejudice upon a finding of settlement between Ms. Banks and Barnett, and (2) the chancellor erred when he granted to Ms. Banks, the duly appointed guardian of the minor children and a recipient of Aid to Families with Dependent Children (AFDC), the authority to settle the unliquidated claims of the minor children against Barnett, the putative father, without the knowledge of, participation in, or approval of, the Department. It is the position of the Department that it had a vital interest in the outcome of this cause and was denied a meaningful opportunity to effectively intervene. We agree.
Two (2) separate proceedings, both inextricably interwoven, were initiated in the lower courts either by, or on behalf of, Betty Jean Banks. They were:
 1. LaShondra D. Banks, LaToya D. Banks and LaBroderick D. Banks, Minors, By and Through Their Mother and Next Friend, Betty Jean Banks v. Timothy A. Barnett, Cause Number 9420 in the *Page 432 
Chancery Court of Bolivar County, Mississippi (hereinafter referred to as "the paternity case"); and
 2. In the Matter of the Estate of LaShondra D. Banks, LaToya D. Banks, and LaBroderick D. Banks, Minors, By and Through Their Mother and Next Friend, Betty Jean Banks, Cause Number 9572 in the Chancery Court of Bolivar County, Mississippi (hereinafter referred to as "the guardianship case").
The chancellor found as a fact that
 1. Betty Jean Banks is a recipient of Aid for Dependent Children on behalf of the aforesaid minor children and by virtue of Miss. Code Ann. § 43-19-35
(1972) has made an assignment to the State Department of Human Services for the period of time assistance is being paid by said department;
 2. The Mississippi Department of Human Services is a party in interest in this cause and should be allowed to intervene so this Court can consider their interest fully;
 3. Betty Jean Banks has renounced her right to any further Aid for Dependent Children on behalf of the aforesaid minors in open Court at the time of her appearance herein on June 4, 1992;
 . . . .
 9. The Department of Human Services' interest in this case was fully considered by this Court as an Intervenor before this Court proceeded to appoint Ms. Banks as Guardian or consider and approve the settlement on behalf of the minors;
The dismissal of the action, with prejudice, upon a finding by the chancellor of settlement between the original parties effectively impaired or impeded, if not precluded, the intervenor, i.e., the DHS, from fully asserting its claim and protecting its interest. The Department was denied a meaningful opportunity to intervene in the lawsuit and settlement process and to assert, adjudicate, and enforce its rights under its statutory assignment. The DHS should have been made a party to the action. Because it was not, we reverse, render, and remand.
 FACTS Betty Jean Banks, a single woman, is the natural mother of three (3) children, each born out of wedlock: LaShondra D. Banks, born January 19, 1985; LaToya D. Banks, born February 7, 1987, and LaBroderick D. Banks, born January 24, 1988. Ms. Banks, single and unmarried when the minors were born, was the recipient of Aid to Families with Dependent Children (AFDC) in the amount of $144.00 per month, food stamps in the amount of $352.00 per month, as well as Medicaid benefits. Ms. Banks first began receiving AFDC in 1985. She was a recipient until she renounced her rights to aid on the day of court, June 4, 1992.
Timothy A. Barnett, a former resident of Gunnison, Mississippi, is a professional football player for the Kansas City Chiefs organization. He had recently been drafted by the Chiefs and was attending training camp when he became the target of a paternity suit filed by Banks. At the time of the trial, Barnett was married and residing with his wife in Overland Park, Kansas.
The Mississippi Department of Human Services, formerly the Mississippi Department of Public Welfare, is a State agency that sought to intervene in the present action through its Division of Child Support Enforcement.
On July 24, 1991, Banks, by and through her private attorney, Thomas Morris, Sr., initiated, as next friend and mother of the minor children, a Complaint in the nature of a paternity suit which was filed in Bolivar County, Mississippi, on behalf of the children. Banks named Barnett as the defendant and sought to establish paternity and to obtain an award of child support.
By virtue of a state statute, Miss. Code Ann. (1972) § 43-19-35
(Supp. 1992) Banks, as a recipient of public aid, had assigned to the Department "[a]ny and all rights and interests in any cause of action past, present, or future, that [the] recipient or the children may have against any parent failing to provide for the support and maintenance of said minor child or children for the period of time that assistance is being paid by said department." The Complaint, which was filed over *Page 433 
three (3) years after the birth of Banks' last child, alleges in paragraph V. that "[d]efendant was recently drafted into the National Football League by the Kansas City Chiefs and is more than able to provide for the maintenance and support of his minor children."
On October 3, 1991, the chancellor, pursuant to Miss. Code Ann. (1972) § 93-9-21 (Supp. 1992), entered an Order Directing BloodTest. Although the chancellor ordered all parties to submit to genetic blood testing, no tests were ever performed, and Banks did not seek to enforce the order. Rather, Banks and Barnett continued to negotiate for a settlement without litigation to determine paternity.
On October 9, 1991, Barnett filed his Answer affirmatively asserting "[t]hat he is not the father of LaShondra D. Banks, LaToya D. Banks and LaBroderick D. Banks; and, as to the issue of paternity, [he] demands trial by jury."
The Department claims it was not aware of the ongoing litigation between Banks and Barnett until the first week of June, 1992. On June 2nd, nearly a year after Banks filed her complaint, the Department, by and through its IV-D Division of Child Support Enforcement, filed in the paternity case itsMotion of Intervention and for Blood Tests setting forth its statutory authority and interest in the action and requesting an additional court order for blood testing. Neither Ms. Banks nor any of her children ever appeared for blood testing, and her lawyer never made a demand for compliance with the chancellor's order directing blood tests.
Prior to the Department's motion of intervention, the usual discovery was initiated, and appropriate responses were filed. This eventually led to a negotiated settlement of almost all issues on June 4, 1992, two (2) days after the Department moved to intervene. On that day the chancellor, after Ms. Banks had renounced her entitlement to AFDC, entered a decree in the guardianship case approving the settlement.
To facilitate the settlement, an ancillary proceeding, the guardianship case, had been initiated in the same Court for the purpose of establishing the mother as the lawful guardian of the minor children. On June 4, 1992, Ms. Banks, by virtue of the authority found in Miss. Code Ann. § 93-13-59 filed in Cause Number 9572, the guardianship case, a "Petition for Appointment of General Guardian" and a "Petition for Authority to Settle Unliquidated Claim of Minor." Attached to the latter pleading as Exhibit A was a "Schedule of Compensation" and an "Absolute Release With Covenants." Under the terms of the release with covenants Ms. Banks, as her children's legal guardian, and Mr. Barnett, as the putative father and defendant below, agreed to the acceptance of a financial arrangement in return for a release of further proceedings and a forbearance of future litigation against Barnett.
The Chancery Court of Bolivar County made a fact determination that Ms. Banks was a fit and proper person to serve as guardian and issued a decree appointing her as general guardian. The chancellor also issued a decree authorizing Ms. Banks, in her capacity as guardian and acting through private counsel, to settle the unliquidated claims of the minor children. The decree also approved the settlement in the wake of a finding that "the consideration [was] adequate and sufficient." The guardianship proceedings on June 4th were conducted unilaterally without intervention by the DHS.
A release was subsequently entered into with consideration paid jointly to Ms. Banks, as guardian, and to her attorney, for deposit in the guardianship fiduciary account, subject to the rights of the Department, if any, with respect to the amount of any unpaid support obligation that had accrued under lawful assignment to the Department by Ms. Banks.
On June 9, 1992, the chancellor entered a Final Judgment in Cause Number 9420, the paternity case, after the cause came on for hearing "[o]n the Motion of Intervention filed herein by the Mississippi Department of Human Services and on the Motion OreTenus of the Plaintiff for a Final Judgment of Dismissal."
The chancellor set forth a detailed finding of fact which stated, inter alia, that
 13. This action should be dismissed with prejudice as to all of the rights of Plaintiff *Page 434 
and Intervenor; except that Intervenor's rights with respect to the amount of the unpaid support obligation accrued under the assignment are reserved, but only to the extent of the amount of past assistance paid to plaintiff by the Department of Human Services which has not been reimbursed to the Department of Human Services.
The chancellor rendered a Final Judgment in the following language:
 IT IS ACCORDINGLY ORDERED AS FOLLOWS:
 1. The Mississippi Department of Human Services ("Department") is allowed to intervene in this action;
 2. The Department's Motion for Blood Test is moot by prior like Order of this Court under date of October 3, 1991;
 3. This action is dismissed with prejudice as to the rights of Plaintiff, the minors and the Department with the exception of the Department's right with respect to the amount of any unpaid support obligation that accrued under lawful assignment to the extent of the amount of past assistance paid to Plaintiff by the Department which has not been reimbursed to the Department.
 DISCUSSION
In appeals from chancery court, the Supreme Court's scope of review is quite limited.
Findings of fact made by a chancellor will not be disturbed by the Supreme Court unless they are either manifestly wrong, clearly erroneous, or unsupported by substantial credible evidence. See Smith v. Dorsey, 599 So.2d 529, 533 (Miss. 1992);Smith By and Through Young v. Estate of King, 579 So.2d 1250, 1251 (Miss. 1991); Bowers Window and Door Co., Inc. v. Dearman,549 So.2d 1309, 1313 (Miss. 1989); Williams v. Evans,547 So.2d 54, 58 (Miss. 1989); Johnson v. Black, 469 So.2d 88, 90 (Miss. 1985); Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983) or unless an erroneous legal standard was applied to the facts found by the chancellor. Bell v. Parker, 563 So.2d 594, 596-97 (Miss. 1990).
On the other hand, "[w]hen the [chancellor's] determination is one of law rather than fact, `the familiar manifest error/substantial evidence rule does not prevent this Court from conducting a de novo review of the chancellor's finding.'"Stevenson v. Stevenson, 579 So.2d 550, 552-53 (Miss. 1991) quoting Planters Bank Trust Co. v. Sklar, 555 So.2d 1024, 1028 (Miss. 1990).
This Court will not hesitate to reverse a chancellor when his findings are manifestly wrong or when he has applied an erroneous legal standard. Tilley v. Tilley, 610 So.2d 348, 351 (Miss. 1992); Faries v. Faries, 607 So.2d 1204, 1208 (Miss. 1992).
Miss. Code Ann. § 93-9-9 (Supp. 1992) provides, inter alia,
that
 [p]aternity may be determined upon the petition of the mother, the child, or any public authority chargeable by law with the support of the child; . ..
This section, combined with Miss. Code Ann. § 43-19-31 and §43-19-35, grants to the Department of Human Services the right to petition the chancery court to have the paternity of a child born out of wedlock determined. "The right [of the DHS] is separate from and independent of the right of the mother." Minor v. StateDepartment of Public Welfare, 486 So.2d 1253, 1255 (Miss. 1986).
Miss. Code Ann. § 43-19-31 authorizes the State Department of Human Services to establish a Child Support Unit, one of the purposes of which is
 (b) To secure and collect support by any method authorized under state law and establish paternity for any child or children receiving aid from the department,
 . . .
Miss. Code Ann. § 43-19-35, which assigns to the DHS certain rights of welfare recipient mothers, reads, in part, as follows:
 (1) By accepting public assistance for and on behalf of a child or children, the recipient shall be deemed to have made an assignment to the State Department of Human Services of any and all rights and interests in any cause of action, past present or future, that said recipient or *Page 435 the children may have against any parent failing to provide for the support and maintenance of said minor child or children for the period of time that assistance is being paid by said department; said department shall be subrogated to any and all rights, title and interest the recipient or the children may have against any and all property belonging to the absent or nonsupporting parent in the enforcement of any claim for child or spousal support, whether liquidated through court order or not. The recipient shall also be deemed, without the necessity of signing any document, to have appointed the State Department of Human Services to act in his or her, as well as the children's name, place, and stead to perform the specific act of instituting suit to establish paternity or secure support, . . . [emphasis supplied]
We have held that by virtue of its providing public assistance for the benefit of minor children, the DHS has become subrogated to the recipient's rights against the putative father. Hull v.State Department of Public Welfare, 515 So.2d 1205, 1207 (Miss. 1987).
This Court has also held that reimbursement or indemnification for welfare expenditures for children receiving aid to dependent children is permitted under § 43-19-35. Hailey v. Holden,457 So.2d 947, 950 (Miss. 1984). Our statutes are intended "to protect the state's interest when it appears likely that the child is or will become a public charge . . ." as well as to "protect the public purse." Ivy v. State Department of PublicWelfare, 449 So.2d 779, 781 (Miss. 1984).
Miss. Code Ann. § 93-13-59 (1972), which empowers guardians to settle doubtful claims due their wards, reads as follows:
 Guardians may be empowered by the court, or chancellor in vacation, to sell or compromise claims due their wards, on the same proceedings and under the same circumstances prescribed in reference to the sale or compromise by an executor or administrator of claims belonging to the estate of a deceased person. And the guardian in such case is authorized to receive in satisfaction of claims, when to the interest of the ward, property, real or personal, the title to be taken in the name of the ward.
Claims authorized in the Mississippi Uniform Law on Paternity may be settled pursuant to § 93-13-59. Atwood v. Hicks byHicks, 538 So.2d 404 (Miss. 1989).
Barnett argues that Rule 54(b), Miss. R.Civ.P., operates to give the chancellor's "Final Judgment" interlocutory effect and that the DHS' appeal is either premature or untimely.
We agree with the DHS that the Final Judgment is more than interlocutory in nature. It is a final, appealable judgment, comprehensive in scope, replete with extensive findings of fact and conclusions of law. It is a final judgment of dismissal of the action with prejudice against Ms. Banks, the minor children and the Department.
The DHS provided AFDC and other public assistance to Ms. Banks. Accordingly, Banks had made an assignment of her rights to the Department pursuant to statute. The Department had rights and interests relating to the subject of the action, and the chancellor so found as a fact. Nevertheless, the DHS was not initially made a party to the paternity case. See Rule 19(a)(2), Miss. R.Civ.P., which provides that a party shall be joined if "he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."
The practical matter of the payment of funds to the DHS through any settlement procedure has become impaired or impeded inasmuch as the "Absolute Release With Covenants" made no provision for the repayment to the Department of funds expended for the children's welfare. The method of collecting a pecuniary award is, at best, illusory.
Upon learning that Ms. Banks was a recipient of AFDC and other public assistance through the Mississippi Department of Human Services, the trial court should have *Page 436 
ordered that the Department be made a party to the paternity action. Since the Court did not, the Department, by virtue of Rule 24(a)(2), Miss.R.Civ.P. (1982), had a duty to intervene in the matter. The Department's intervention in the action was one of right since it claimed an interest relating to the subject matter of the action and was so situated that the disposition of the action could, as a practical matter, impair or impede its ability to protect that interest, unless its interest was adequately represented by existing parties.
Although the chancellor granted the Department's motion to intervene, it did so in its Final Judgment entered on June 9, 1992, after the parties to the original action had already negotiated and executed the settlement agreement.
The DHS filed its motion for intervention in the paternity case on June 2, 1992. On June 4, 1992, the chancellor, in the guardianship case, issued Letters of Guardianship and authorized Ms. Banks, as court-appointed guardian of her three (3) minor children, to settle the unliquidated claims of the children. Since the lower court did not grant the Department's motion to intervene until June 9, 1992, the belated granting of the Department's motion impaired or impeded, if not precluded, the DHS from participating in the settlement process and in protecting its interest in the case, all to the detriment of the Department.
We note that the chancellor's Final Judgment approving the settlement states that "[t]he Department of Human Services' interest in this case was fully considered by this Court as an Intervenor before this Court proceeded to appoint Ms. Banks as Guardian or consider and approve the settlement on behalf of the minors." Nevertheless, the Department was not granted its status as intervenor and was not made a party to the action until June 9th when the final judgment was entered dismissing the action with prejudice. This, in our opinion, was too little too late.
Barnett relies upon Atwood v. Hicks by Hicks, 538 So.2d 404
(Miss. 1989), where we held that a claim made on behalf of a minor child against the putative father for paternity and for maintenance and support may, with court approval, be finally settled under the "doubtful claims" statute.
Atwood, although containing viable law, does not completely control this case because Atwood involved private litigants, and no assignment of rights and interests had been generated by the acceptance on the part of the custodial parent of public assistance. Stated differently, the Department of Human Services was not implicated as an interested party.
Had the Department been allowed to file responsive pleadings and join issue, it could have raised several objections and entered its plea for specific affirmative relief, particularly to the point concerning the DHS' interest in the case. By its granting the Department's motion to intervene contemporaneously with the dismissal of the action, the trial court pretermitted the Department's right to even raise any relevant issues, let alone specifically address them.
Mississippi's assignment statute, § 43-19-35, includes "any and all rights and interests in any cause of action, past, presentor future, . . ." (emphasis supplied) Upon Ms. Banks' acceptance of public assistance and her assignment pursuant to Section43-19-35, the Department took an assignment of her interest, and of the minor children's interest, in "any cause of action," after which the Department became vested with the right to proceed against Barnett to establish paternity and seek an order awarding child support. Ms. Banks could not then unilaterally proceed,
without the Department's participation, to ignore the Department's interest in the negotiation and settlement of her claim against Barnett.
We recognize that the chancellor, in his wisdom, attempted to provide a source of immediate relief for the minor children who had been relying on public assistance for their support. In so doing, however, he did not have the benefit of the Department's arguments and positions as to relevant issues. Having dismissed the action prior to allowing the Department to articulate and advance its position, the chancellor denied the Department a meaningful opportunity to enforce its rights in intervention. *Page 437 
 CONCLUSION
The settlement between Ms. Banks and Barnett is a nullity because the DHS had no meaningful opportunity to intervene in the lawsuit and settlement.
We agree with the DHS that the chancellor was manifestly wrong in granting the Department's motion for intervention while at the same time dismissing the action with prejudice. This procedure effectively negated any meaningful participation by the Department in the paternity case which had been settled by the original parties to the action via the guardianship case before
the Department was granted status as an intervenor. As a practical matter, this was tantamount to overruling the Department's motion for intervention. There is no way the chancellor could consider, fully, fairly, and finally, the interest of the DHS without granting it a meaningful opportunity to intervene and protect its rights and interests generated by statutory assignment.
Because the chancellor's Final Judgment is appealable, and because the DHS was not made a party to the paternity and child support action and the negotiated settlement which flowed in its wake, this case is reversed and remanded for proceedings consistent with the opinion of this Court.
REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THE OPINION OF THIS COURT.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN and SMITH, JJ., concur.
BANKS, J., dissents with separate written opinion joined by DAN M. LEE, P.J., and McRAE, J.