# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-CA-00568-SCT

*PAR INDUSTRIES, INC. d/b/a FLEXIBLE FLYER COMPANY*

*v.*

*TARGET CONTAINER COMPANY, AN ALABAMA CORPORATION, AND JACK KELLERMAN*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/22/95 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | CLAY COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | HAL H. H. McCLANAHAN |
| ATTORNEYS FOR APPELLEES: | THOMAS WICKER |
| | JOHN G. PARKER |
| | MELINDA L. MOSELEY |
| | DENNIS W. VOGE |
| NATURE OF THE CASE: | CIVIL - TORTS (OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE) |
| DISPOSITION: | AFFIRMED - 2/12/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/31/98 |

**BEFORE SULLIVAN, P.J., MILLS AND BANKS, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This appeal arises from the December 22, 1995, judgment by the Circuit Court of Clay County in favor of the appellees, Target Container Co, Jack Kellerman, and Bobby Oswalt. Par Industries d/b/a Flexible Flyer filed suit on November 14, 1991, alleging tortious interference with contractual business relations against Target Container Co. and Jack Kellerman. The answer filed by Target counterclaimed for the outstanding balance of $201,469.48 on the open account of Flexible Flyer, late charges, accrued interest and attorney fees.

¶2. All claims were tried by agreement of the parties before the Honorable Lee J. Howard sitting without a jury on October 9-12, 1995. On December 22, 1995, the circuit court entered judgment in favor of Target and Kellerman on Flexible Flyer's claims. The court also found in favor of Target on its counterclaim on open account against Flexible Flyer in the amount of $201,469.48, plus interest at

the rate of 8 % per annum from October 6, 1992.

¶3. On January 5, 1996, Flexible Flyer filed a motion for a new trial, which was denied by order dated May 14, 1996. Target then filed a motion for attorney fees pursuant to Miss. Code Ann. § 11-53-81 (Supp. 1997). The circuit court awarded Target attorneys' fees of one-third of the amount collected on open account, or $67,156.49 by order dated May 17, 1996. Flexible Flyer filed this appeal on May 24, 1996.

## STATEMENT OF THE LAW

### I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN NOT FINDING FOR AND AWARDING JUDGMENT TO PAR AND AWARDING JUDGMENT TO TARGET.

### II. THE JUDGMENT OF THE TRIAL COURT IS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE AND FACTS AS TO (A) INTERFERENCE WITH CONTRACT AND (B) INTERFERENCE WITH THE BUSINESS RELATIONSHIP BETWEEN FLEXIBLE FLYER AND ITS EMPLOYED OSWALT.

### i. standard of review

¶4. "A circuit court judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor," and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence. *Puckett v. Stuckey*, 633 So. 2d 978, 982 (Miss. 1993); *Sweet Home Water & Sewer Ass'n v. Lexington Estates, Ltd.*, 613 So. 2d 864, 864, 872 (Miss. 1993); *Allied Steel Corp. v. Cooper*, 607 So. 2d 113, 119 (Miss. 1992). Where the trial court failed to make any specific findings of fact, this Court will assume that the issue was decided consistent with the judgment and these findings will not be disturbed on appeal unless manifestly wrong or clearly erroneous. *Sweet Home Water & Sewer Ass'n*, 613 So. 2d at 872; *Omnibank of Mantee v. United Southern Bank*, 607 So. 2d 76, 82 (Miss. 1992). The reviewing court must examine the entire record and must accept, "that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact." *Cotton v. McConnell*, 435 So. 2d 683, 685 (Miss. 1983) (*quoting Culbreath v. Johnson*, 427 So. 2d 705, 707-708 (Miss. 1983)). That there may be other evidence to the contrary is irrelevant. *Id.* at 686.

¶5. In contrast, this Court reviews errors of law de novo. *Cummings v. Berdman*, 681 So. 2d 97, 100 (Miss. 1996); *Ford v. Holly Springs School Dist.,* 665 So. 2d 840, 843 (Miss. 1995)*;Cooper v. Crabb,* 587 So. 2d 236, 239 (Miss. 1991). "Notwithstanding our respect for and deference to the trial judge, on matters of law it is our job to get it right. That the trial judge may have come close is not good enough. " *Cooper*, 587 So. 2d at 239 (*quoting UHS-Qualicare, Inc. v. Gulf Coast Community Hospital, Inc.*, 525 So. 2d 746, 754 (Miss. 1987)). If an erroneous legal standard was applied to the facts, this Court will apply a de novo standard of review of the chancellor's findings and will not hesitate to reverse. *Mississippi State Dept. of Human Services v. Barnett*, 633 So. 2d 430, 434 (Miss. 1993).

¶6. Flexible Flyer argues that the proper standard of review is de novo for two reasons. First, it asserts that because the circuit court failed to make its own findings of fact and conclusions of law

then this Court must use heightened scrutiny. In support of this contention it cites to ***Brooks v. Brooks***, 652 So. 2d 1113 (Miss. 1995). This reliance is misplaced. The ***Brooks*** trial court adopted verbatim the findings of fact and conclusions of law submitted to the court by one of the parties. The ***Brooks*** Court stated that when this is done, "the deference normally afforded a chancellor's findings of fact is lessened." ***Brooks***, 652 So. 2d at 1118. This rule is inapplicable to the present case because in the case at bar, neither party submitted any proposed findings of fact or conclusions of law to the circuit court.

¶7. The second reason Flexible Flyer gives to support its argument that a de novo standard of review is appropriate in this case is its assertion that the trial court applied an erroneous legal standard. In order to determine if this assertion is correct this Court must first determine what the legal elements are for each of the two claims asserted, tortious interference with contract and interference with business relations, that the judge apparently found had not been satisfied.

### ii. tortious interference with contract

¶8. When a person causes another to breach a contract with some third person, the tort is one of interference with performance of a contract. The four elements for this tort are: "(1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted." ***Cenac v. Murry***, 609 So. 2d 1257, 1268-69 (Miss. 1992) (*citing* ***Liston v. Home Ins. Co.***, 659 F.Supp. 276, 281 (S.D.Miss. 1986)). The plaintiff must prove that an enforceable obligation existed between the plaintiff and another party. ***[Merchants & Planters Bank of Raymond v. Williamson](#)***, 691 So. 2d 398, 407 (Miss. 1997). In addition, the plaintiff must prove that the contract would have been performed but for the alleged interference.

¶9. Flexible Flyer contends that the trial court applied an incorrect legal standard as it relates to the element of intent. It argues that the ***Liston*** case held that the plaintiff does not have to prove specific intent to show wilful and intentional action as required in the third element. It contends that the defendant's subjective intent of not meaning to harm Flexible Flyer is not a defense and consequently, the court erred in not finding that the actions of Target, whether intentional or not, caused damage to Flexible Flyer. The ***Liston*** Court is instructive as it pertains to the element of intent when it states:

> The element of willfulness and calculation does not require a showing on the part of the plaintiff that defendant had a specific intent to deprive plaintiff of contractual rights. Rather, the requisite intent is inferred when defendant knows of the existence of a contract and does a ***wrongful act without legal or social justification that he is certain or substantially certain will result in interference with the contract.***

***Liston v. Home Ins. Co.***, 659 F.Supp. 276, 281 (S.D. Miss. 1986) (emphasis added). Target and Kellerman have never argued that Flexible Flyer must show a specific intent to deprive it of contractual rights in order to establish the elements of willfulness and calculation. There is no evidence in the record that the trial court was under an erroneous belief that it had to find specific intent in order for Flexible Flyer to prevail and the court was aware of the applicable law when it rendered its decision. Therefore, this Court will apply an erroneous standard of review instead of a de novo review.

### iii. tortious interference with business relations

¶10. As differentiated from interference with contract, the tortious interference with business relations occurs when a person unlawfully diverts prospective customers away from one's business, and this tort is sometimes referred to as "malicious injury to business." *Cenac*, 609 So. 2d at 1268-69. The Court in *Cenac* explained that:

> [A] cause of action exists [for tortious interference with business relations] where one engages in some act with a malicious intent to interfere and injure the business of another, and injury does in fact result. . . Therefore, the essential elements of this tort are somewhat different from tortious interference with contract. The remedy for the tort is *damages*, and the plaintiff must also show (1) a loss, and (2) that defendant's conduct caused the loss. Prosser & Keeton, *The Law of Torts*, § 130, 141 (5[th] ed. Supp. 1988).

*Cenac*, 609 So. 2d at 1271 (emphasis in original). According to *Cenac*, this Court intended there be different elements for interference with business relations and interference with contract, but in a later case this Court set out the same four elements for interference with a business relationship that apply to the separate tort of interference with contract. *MBF Corp. v. Century Business Communications, Inc.*, 663 So. 2d 595, 598 (Miss. 1995); *See also Nichols v. Tri-State Brick and Tile Co., Inc.,* 608 So. 2d 324, 328 (Miss. 1992) (identical elements applicable to tort of interference with prospective business advantage and tort of interference with contract). Even applying the two requirements of a malicious intent to interfere and injure the business of another, and a resulting injury, the same legal standard with reference to the element of intent is applicable to either claim for tortious interference with contract or with business relations. Therefore, this Court must review the facts and determine if findings of fact by the trial court that were necessary to support the judgment are clearly erroneous and against the overwhelming weight of the evidence.

### iv. factual analysis

¶11. The Circuit Court necessarily found that neither Target nor Kellerman committed any acts that rose to the level of tortious interference. It expressly found that Flexible Flyer failed to meet its burden of proving each element by the preponderance of the evidence. The relationship between Oswalt and Kellerman and the loans themselves are basically undisputed but the inferences drawn from those facts are in much dispute. The record shows that Par Industries d/b/a Flexible Flyer manufactured gym sets, hobby horses, and sleds for mass retailers at its Clay County plant. Corrugated material was one of the primary components in its toys. Bobby Oswalt was employed as a purchasing agent for Par Industries pursuant to an oral at-will employment contract from 1985, to his termination in February, 1991. Target's Birmingham production plant sold boxes to Flexible Flyer primarily for its gym sets and hobby horses from 1985 to 1991 and was considered to be one of Target's largest accounts. Jack Kellerman was a sales representative for Target, and until January 1990, a twenty percent shareholder of Target. After Target was purchased by Pratt Industries on January 29, 1990, Kellerman's sole responsibility was to handle the Flexible Flyer account until his retirement in December of 1991.

¶12. On April 6, 1987, Oswalt's wife, Terry, now Mrs. Brewer, and Kellerman formed OK Construction Co. by a partnership agreement in order to build houses. Kellerman provided the

financing for the business, and continued to provide personal loans to Bobby Oswalt until 1990, although there is some question as to whether Kellerman continued to be a partner in the business after 1988, when the first home was completed and sold. Kellerman took advances against his income from Target between 1988 and 1990 and may have used some of this money to make the loans to Bobby Oswalt. These basic facts are undisputed. However each party presented its interpretation at trial of what this relationship and the transactions that transpired between the two men were intended to mean.

¶13. Terry testified that the partnership had nothing to do with Kellerman and Oswalt's professional relationship as seller and purchaser. At all times, Kellerman and Oswalt considered their construction business venture to be entirely separate from, and to have no influence on, their business relationship as a sales representative for Target and purchasing agent for Flexible Flyer. At no time has Flexible Flyer or Target had any policy, written or oral, prohibiting their employees from engaging in unrelated business activities with each other. When Oswalt filed for bankruptcy in August of 1992, he listed all the advances as debts totaling $46,900 which were eventually discharged. Kellerman wrote this off as bad debts totaling $48,292 on his 1990 tax return. Target argues that the evidence shows at best poor business judgement on the part of Kellerman to make loans without protecting his interests and continue making loans when previous loans had not been repaid. Target argues that neither it nor Kellerman's actions were calculated or had the purpose of causing damage and loss to Flexible Flyer and that no actual damages resulted or had been proved at trial.

¶14. In contrast, Flexible Flyer argues that the actions of the selling agent Kellerman, an officer and director and employee of defendant Target, were intended to influence Par's buying decision through Bobby Oswalt to purchase Target's goods over a four-year period at a substantially higher cost than was available from other suppliers providing similar services for the same product. Flexible Flyer argues that its contract with Oswalt as its purchasing agent would have been performed but for the actions of Target and Kellerman. "In order for a cause of action to exist for interference with a contract it must be proved that the contract in question would have been performed 'but for' the wrongful interference of the defendant, and that the interference complained of was wrongful." *Johnson v. Warnaco*, Inc. 426 F.Supp. 44, 47 (S.D. Miss. 1976). Flexible Flyer contends that at all times there were other vendors providing identical products at lower prices with the same service such as spotting of trailers, extended credit terms and quick, turn-around service as Target provided. However, this point was hotly contested at trial. Flexible Flyer asserts that the evidence demonstrates that Kellerman and Target's actions were wrongful and both defendants were substantially certain these actions would result in interference with the employment contract between Flexible Flyer and Oswalt. *Liston*, 659 F.Supp. at 281. Flexible Flyer cites to *Guastella v. Wardell*, 198 So. 2d 227 (Miss. 1967) to support its contention that Target cannot escape liability because it did not intend for the end result to happen. "People are presumed to contemplate the natural consequences of their actions." *Id.* at 229. However, it was in much dispute that Target or Kellerman knew or should have known that the separate business relationship between Kellerman and Oswalt would have any effect on Flexible Flyer's business.

¶15. After hearing all the evidence, the trial court determined that Kellerman had not committed any "wrongful acts". When considering all the facts, it is reasonable to conclude that Kellerman loaned money to Oswalt and OK Construction in part as a business investment that failed and because Kellerman wanted to help out his close friend. Although it is difficult to tell what each loan was used

for by OK Construction, and the testimony of Oswalt and Terry was evasive as to how the money was spent, all the money was paid by check, deposited into an OK Construction account and there were 14 sets of land transactions in connection to several homes that were built and sold from 1987 to 1991, the relevant time period that Kellerman and Oswalt had this separate business relationship. The first set of loans in 1987 for the first house built by OK Construction was repaid in full and Kellerman reported the income from this house on his 1988 tax return. These facts could support the conclusion of the trial court that these loans were independent and were not made with the purpose of harming Flexible Flyer in any way and the intent, whether it be specific or not, was not proven by the preponderance of the evidence.

### v. damages in relation to both causes of action

¶16. The trial court could have found the element of damages was not proven by a preponderance of the evidence. Flexible Flyer has the burden of proof to show the financial loss it suffered which was caused by Target and Kellerman. *Cenac*, 609 So. 2d at 1271. Flexible Flyer cites to *Johnston v. Safeco Ins. Co. of America*, 727 F.2d 548 (5th Cir. 1984) and *R & S Development, Inc. v. Wilson*, 534 So. 2d 1008 (Miss. 1988) for the proposition that defendants cannot escape liability because of lack of a scientifically precise measure of damages. "'[A] reasonable basis for computation and the best evidence which is obtainable under the circumstances of the case, and which will enable the trier to arrive at a fair approximate estimate of loss is sufficient proof. '" *MBF Corp.*, 663 So. 2d at 599 (quoting Koehring Co. V. Hyde Construction Co., 254 Miss. 214, 251, 178 So. 2d 838, 853 (1965)). While this is true, a damage award cannot be based on mere speculation. *Cenac*, 609 So. 2d at 1271-72. As far as the issue of damages, the methodology used to compute these damages is questionable. The calculations were all done internally by Flexible Flyer, no adjustments were made for quantities ordered, seasons in which the goods were ordered, or differences in "set-up" charges and no market studies were conducted. Flexible Flyer chose the lowest comparable price for a calendar year and even admitted to an error of double skewing. Flexible Flyer even compared prices from vendors who shipped to another plant. Based on the internal calculations, Flexible Flyer contends the total overcharge, including interest at 9% is $460,467.47. Given the suspect nature of how Flexible Flyer tried to prove its damages, it is certainly reasonable for the trial court to conclude that Flexible Flyer has not met its burden of proof as to any damages that resulted from Kellerman's and Oswalt's separate business relationship. Therefore, this Court finds that the judgment of the lower court was not clearly erroneous or against the overwhelming weight of the evidence.

### III. WHETHER THE TRIAL COURT ERRED IN REFUSING TO ALLOW APPELLANT TO AMEND THE PLEADINGS TO CONFORM TO THE PROOF TO ADD THE THEORY OF COMMERCIAL BRIBERY.

¶17. This Court has stated that "'[m]otions for leave to amend are left to the sound discretion of the trial court. This Court reviews such determinations under an abuse of discretion standard and unless convinced that the trial judge abused his discretion, we are without authority to reverse.'" *Church v. Massey*, 697 So. 2d 407, 413 (Miss. 1997) (*quoting McCarty v. Kellum*, 667 So. 2d 1277(Miss. 1995)). This Court has consistently held that leave to amend is left to the sound discretion of the trial judge. *Bourn v. Tomlinson Interest, Inc.*, 456 So. 2d 747, 749 (Miss. 1984)("authority to reverse only where we are convinced that the trial judge abused his discretion"); *McDonald v. Holmes*, 595 So. 2d 434 (Miss. 1992); *Hester v. Bandy*, 627 So. 2d 833 (Miss. 1993); *Simmons v. Thompson*

*Machinery of Mississippi, Inc.*, 631 So. 2d 798 (Miss. 1994). However, the court is to be liberal in allowing a party to amend when justice so requires. *Broadhead v. Terpening*, 611 So. 2d 949, 953 (Miss. 1992); *Red Enterprises, Inc. v. Peashooter, Inc.*, 455 So. 2d 793, 796 (Miss. 1984). The procedure for amending the pleadings to conform to the proof is governed by Mississippi Rules of Civil Procedure 15(b). This rule states in part:

> When issues not raised by the pleadings are tried by expressed or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial on these issues. . . . The court is to be liberal in granting permission to amend when justice so requires.

Miss. R.Civ. P. 15(b).

¶18. Flexible Flyer argues that the issue of commercial bribery had long been recognized in this suit although it had not been specifically pled, and since there was no surprise the denial of its motion to amend was an abuse of discretion. In support of this argument it cites to several cases that have allowed a pleading to be amended based on advance notice to the defendants. *See Carmichael v. Agur Realty Co., Inc.*, 574 So. 2d 603 (Miss. 1990) (allowing the enlargement of claims at trial to include claims of a partnership or joint venture when the defendants noted the new theory but did not object); *Independent Life & Accident Ins. Co. v. Peavy*, 528 So. 2d 1112, 1116-17 (Miss. 1988) (pleadings sufficiently gave notice to defendant of claims advanced at trial and "[t]he court should be liberal in granting permission to amend when justice so requires"); *Broadhead*, 611 So. 2d at 953 (defendants were on notice of exact relief being sought and were on notice to defend against claim based on easement by necessity and there was no objection to plaintiff's motion to amend); *Norris v. Norris*, 498 So. 2d 809, 812 (Miss. 1986) (finding the pleadings to be adequate but nevertheless the issue of undue influence was tried by implied consent since there was no objection made by the defendants). Flexible Flyer particularly relies on *Presswood v. Cook*, 658 So. 2d 859 (Miss. 1995) to show that the trial court abused its discretion in denying its motion to amend. In *Presswood*, the Court ruled that the defendant had impliedly consented to the introduction of a negligence theory by the plaintiff, when the plaintiff implicitly amended her complaint by introducing the negligence issue in her motion opposing summary judgment. *Id.* at 861.

¶19. Flexible Flyer contends that Target's motion for summary judgment specifically developed this issue just like the plaintiff in *Presswood*. However, when looking at the motion it states that "Flex Flyer contends that Target and Kellerman, and Mr. Oswalt engaged in a "kick-back" scheme whereby Mr. Oswalt personally would receive payments from Mr. Kellerman, as Target's agent, in return for his purchases of corrugated supplies on behalf of Flex Flyer from Target." This language does not give any indication that Target understood that Flexible Flyer was asserting a cause of action for commercial bribery since these same alleged facts support the claim of tortious interference with contract and business relations. Likewise, Flexible Flyer's characterization of the actions of Target and Kellerman as a "bastardized form of bribery" in its motion for summary judgment is not sufficient to give notice that it was asserting a new cause of action for commercial bribery. This is especially true when the claim supposedly long recognized was based on a criminal statute that has never been asserted in a civil state law claim in Mississippi.

¶20. Flexible Flyer argues that Target never objected to any of the evidence being introduced at trial that showed each element of the crime of commercial bribery, and therefore this Court should find that the issue was tried by implied consent. In order to determine that an issue was tried by implied consent both parties must be able to detect that a new issue was being litigated. *McCarty v. Kellum*, 667 So. 2d 1277, 1283-84 (Miss. 1995) (affirming the denial of plaintiff's motion to amend since the issue of the use of forceps where there was CPD was not tried by implied consent, despite the defense's failure to object, because the evidence was also supportive of the pleadings asserted in the original complaint); *See also* *Shipley v. Ferguson*, 638 So. 2d 1295 (Miss. 1994) (reversing award of a tax exemption to the father when the mother was not alerted that this issue not raised in the pleadings was being litigated). In *Setser v. Piazza,* the action was an effort to reduce child support payments and the issue of the child's emancipation was not raised in the pleadings. *Setser v. Piazza*, 644 So. 2d 1211 (Miss. 1994). This Court held the issue of emancipation was not tried by implied consent. By way of explanation this Court stated, "[w]here the questions asked or the evidence presented at trial are relevant to the issues actually raised in the pleadings, trial by implied consent will not be found." *Id.* at 1217. Just as *McCarty*, *Setser*, and *Shipley*, all of the evidence Flexible Flyer presented at trial was relevant to the claims actually raised in the pleadings (tortious interference with contract and with business relations). Consequently, there was no reason for Target and Kellerman to be alerted that a new, unpled theory of "commercial bribery" was being litigated at trial. In addition there is ample reason for the judge to deny the motion based on a lack of due diligence on the part of Flexible Flyer and prejudice to Target if the motion had been granted.

¶21. Although leave to amend should be freely granted when justice requires, there are limits. If there is no prejudice to the defendant then it may be reversible error to deny a motion to amend. *Red Enterprises, Inc.*, 455 So. 2d at 795-96. But the comment to Rule 15 (b) states, "[i]n practice, an amendment should be denied only if the amendment would cause actual prejudice to the opposite party. 6 Wright & Miller, Federal Practice and Procedure, Civil § 1484 (1971)." Miss. R. Civ. P. 15(b) cmt. This Court also explained:

> Freedom to grant leave to amend when justice so requires, as provided by the [Mississippi Rules of Civil Procedure], diminishes as the litigation progresses.
>
> Since *prejudice to the opposing party is the key factor governing the court's discretion in granting leave to amend a pleading,* the court will ordinarily refuse to grant such permission where the motion comes so late and in such circumstances that the right of the adverse party will necessarily be prejudicially affected.
>
> 61A Am.Jur.2d Pleadings § 315 (1981) (emphasis added). It appears to this Court that the timing of the motion to amend the pleadings [offered at the conclusion of trial] was desperately late and potentially prejudicial to the Defendant.

*McCarty*, 667 So. 2d at 1284-85 (emphasis original). Likewise, in *Hester v. Bandy*, this Court reversed the grant of plaintiff's motion to amend by explaining, " . . .amendment should not occur when to do so would prejudice the defendant. Allowing the entire theory of liability to change at the conclusion of a three-day trial seriously prejudiced [the defendant]. . . . Clairvoyance by the defense would have been required to anticipate any contention beyond [what was pled]." *Hester*, 627 So. 2d at 839.

¶22. Target argues they would have been prejudiced if the trial court had allowed the motion to amend at the end of Flexible Flyer's presentation of its case and on the last day of a four-day trial. It asserts that because some of the key witnesses were outside the scope of the circuit court's subpoena power and therefore unavailable for trial, Target and Kellerman did not have the opportunity to examine these witnesses on issues pertinent to a claim of commercial bribery at their depositions. Target argues that Flexible Flyer had full knowledge of all the facts necessary to plead a cause of action for commercial bribery well in advance of trial. This Court has addressed the lack of diligence when it stated:

> An application to amend should be prompt and not the result of an inexcusable want of diligence. *Osborne v. Vince*, 240 Miss. 807, 129 So. 2d 345 (1961). Moreover, amendments which are permitted in the latter stages of litigation may deny the important policy favoring finality of judgments and the expeditious termination of litigation. Thus, liberality in permitting amendments is not allowed to encourage delay, laches and negligence. Griffith, Mississippi Chancery Practice § 392 (2d ed. 1950).

*William Iselin & Co., Inc. v. Delta Auction & Real Estate Co.,* 433 So. 2d 911,913 (Miss. 1983).

¶23. In denying the motion to amend the complaint to conform the pleadings to the proof, the trial court stated, "[t]hat would substantially change the allegations contained in this lawsuit at a time when discovery has been already completed and over--and the trial has proceeded. That motion is overruled. I don't care to hear argument on that one." From this statement one can deduce that the judge believed that Flexible Flyer lacked due diligence in amending the complaint and Target and Kellerman would be adversely prejudiced if the motion to amend was granted at such a late date. Good faith and reasonable diligence is expected by all parties. This Court finds the trial court's denial was not an abuse of discretion. Accordingly, this Court affirms the trial court as to this assignment of error.

## IV. WHETHER THE APPELLEE IS ENTITLED TO ATTORNEY FEES AND IF SO WAS THE AWARD UNREASONABLE?

¶24. The circuit court awarded Target attorney fees on its counterclaim in the amount of $67,156.49 for the collection of an open account debt pursuant to Miss. Code Ann. § 11-53-81. The relevant statute states in pertinent part:

> When any person fails to pay an open account within thirty (30) days after receipt of written demand therefor correctly setting forth the amount owed and an itemized statement of the account in support thereof, *that person shall be liable for reasonable attorney's fees* to be set by the judge for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the plaintiff.

Miss. Code Ann. § 11-53-81 (Supp. 1997) (emphasis added). There is no dispute between the parties that the counter claim was for an open account.

¶25. Like the case of *S & W Const. and Materials Co., Inc. v. Dravo Basic Materials Co.*, Inc. 813 F.Supp. 1214, 1226 (S.D. Miss. 1992), the only defense Flexible Flyer asserts is that it is entitled to setoff of the open account based upon its claims against Target. The district court held that since the

defendant prevailed on the plaintiff's claims then the defendant is entitled to judgment on its counterclaim. *S & W Const. Co.*, 813 F.Supp. at 1226. Since judgment was rendered in favor of Target on its counterclaim for a debt on an open account after a demand for payment was made prior to filing its counterclaim, Target is the prevailing party and attorney fees were properly awarded.

¶26. In aiding the court in determining what a reasonable fee should be the legislature has provided:

> In any action in which the court is authorized to award reasonable attorneys' fees, the court shall not require the party seeking such fees to put on proof as to the reasonableness of the amount sought, but shall make the award based on the information already before it and the court's own opinion based on experience and observation; provided however, a party may, in its discretion, place before the court other evidence as to the reasonableness of the amount of the award, and the court may consider such evidence in making the award.

Miss. Code Ann. § 9-1-41 (1991). In consideration of the language of this statute, this Court stated, "[t]he standard for review of the award of attorneys' fees is abuse of discretion, and such awards must be supported by credible evidence." *Regency Nissan, Inc. v. Jenkins*, 678 So. 2d 95, 103 (Miss. 1995) (*citing Young v. Huron Smith Oil Co.*, 564 So. 2d 36, 40 (Miss. 1990)).

¶27. Par argues that Target must provide a basis for the court in determining what a reasonable fee should be. The judge addressed this argument at the closing of the trial when he stated, "[u]nder old case law I think maybe Mr. McClanahan may have stated the case correctly in Mississippi, but the statute changed that insofar as the establishment of attorney fees and prejudgment interest on open account collections in the state." However, this Court has considered the issue of the reasonableness of attorney fees after section 9-1-41 became effective and this Court requires the award to be based on credible evidence. *Regency Nissan, Inc.*, 678 So. 2d at 103.

¶28. Par cites to *Doe v. Doe*, 644 So. 2d 1199 (Miss. 1994) and *McKee v. McKee*, 418 So. 2d 764 (Miss. 1982) in support of its claim that the attorney fees awarded were unreasonable. These cases are not controlling in reference to the award of attorney fees in an open account case. However, Par does cite to *DynaSteel Corp. v. Aztec Industries, Inc.*, 611 So. 2d 977 (Miss. 1992) which is relevant to this discussion. In *DynaSteel*, this Court established a presumption "that an award of one-third the amount of the indebtedness in collection matters is reasonable." *DynaSteel Corp.*, 611 So. 2d at 987. But this presumption is rebuttable. *Id.* at 986. Par misreads *DynaSteel* as requiring proof of the eight enumerated factors that have a bearing on the reasonableness of an attorney fee. This Court does not require proof of each of these factors, instead this Court stated, "[u]nder the circumstances of any given case, the judiciousness of adhering to this presumption *may* be impacted by the common factors for determining the reasonableness of an attorneys' fee award . . . ." *Id.* at 986 (emphasis added). This does not mean these factors are not relevant, just that proof of them is not required before a court awards attorney fees. This Court does not leave the reasonableness of an award for attorneys' fees to the arbitrary discretion of the trial court. This Court in *Cox v. Howard, Weil, Labouisse, Friedrichs, Inc.*, reversed an award of attorney fees pursuant to Miss. Code Ann. § 11-53-81 because they were "in excess of any reasonable calculation." *Cox v. Howard Weil, Labouisse, Friedrichs, Inc.*, 619 So. 2d 908, 915 (Miss. 1993). In *Cox*, the trial court granted $69, 222.56 in attorney fees for the collection of an open account balance totaling $54,000.00. *Id.* This Court remanded the case for further review by the trial court below and directed the trial court's

attention to the *DynaSteel* case for guidance. *Id.*

¶29. In the case *sub judice* the lower court specifically found that an award of one-third of the amount collected was appropriate since Target had to defend against Flexible Flyer's claim in order to collect the amount owed. Target presented testimony from attorney Pogue, an experienced trial attorney in Mississippi, who stated that 25% of the amount collected is a reasonable attorneys' fee in Mississippi for collection of an open account if suit is not filed and that 33 1/3% is appropriate if suit is filed. We find that the attorneys' fee award in this case was not an abuse of discretion and was reasonable in light of the time consumed in this case, the amount involved and the results obtained.

## CONCLUSION

¶30. Based on the evidence, this Court finds the trial court's judgment as it relates to the claims asserted by Par was not contrary to the overwhelming weight of the evidence. Target's counterclaim is enforceable as a matter of law and the court's award of attorney fees to Target in the amount of one-third of the amount collected on the open account was not an abuse of discretion. Finally, the denial of Flexible Flyer's motion to amend the complaint to conform to the proof on the last day of a four day trial was proper due to the lack of diligence on the part of Flexible Flyer and the prejudice that could result if the motion to amend had been granted. Consequently, the judgment of the Circuit Court should be affirmed in all respects.

¶31. **AFFIRMED.**

**PRATHER, C.J., PITTMAN, P. J., BANKS, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**