# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-CA-01213-SCT

*CLAUDETTE BROWN f/k/a CLAUDETTE BROWN HINES AND VANESSA HINES, A MINOR*

*v.*

*MISSISSIPPI DEPARTMENT OF HUMAN SERVICES*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/23/1998 |
| TRIAL JUDGE: | HON. JON M. BARNWELL |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | SHIRLEY G. RICE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LEMAN D. GANDY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED, RENDERED IN PART, AND REMANDED - 2/24/2000 |
| MOTION FOR REHEARING FILED: | 3/8/2000; denied 8/10/2000 |
| MANDATE ISSUED: | |

### EN BANC.

### SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:

¶1. This case involves a claim filed against the Mississippi Department of Human Services (DHS) by Claudette Brown (formerly Claudette Brown Hines) (Brown) to recover arrearages of her former husband's child support payments. Brown assigned the rights she had to these payments to the DHS as a condition of her receiving public assistance under the Aid to Families With Dependent Children (AFDC) program. Brown initially applied for AFDC benefits in 1981 for her two children, Julius Brown and Amos Brown. Vanessa Hines, Brown's minor child who was also made party to this action, was added to the AFDC program resulting in an increase of monthly benefits by $24. In order to receive the AFDC benefits, Brown executed a child support assignment, assigning her rights to child support to the State through DHS. Brown maintains that even though she assigned her rights to the delinquent child support payments to the State under the program, if the amount recovered by the State exceeds the amount received by her and her children under the AFDC program, she and Vanessa should be entitled to an accounting and to receive payment of the difference.

¶2. Proceeding on that theory, Brown, individually and on behalf of Vanessa, initiated this civil action against the DHS in the Leflore County Chancery Court by filing a Motion for Accounting and Payment of

Support Collected. DHS filed a Motion to Dismiss on the ground that Brown lacked standing given her assignment to DHS and the applicable statutes. Subsequent to a hearing on the Motion to Dismiss filed by the DHS, the chancellor issued an order dismissing Brown's Motion for Accounting and Payment of Support Collected. Upon a Motion to Reconsider filed by Brown and her minor child, Vanessa Hines, the chancellor, on January 23, 1998, ordered the DHS to furnish an accounting of all sums that had been paid to Brown under the AFDC program, as well as all sums received by the AFDC program as a result of Brown's assignment of child support. The prior order was held in abeyance until such an accounting was received, after which the 30-day appeal deadline would then apply. Though the chancellor had concerns about how the DHS determined the arrearage on individual accounts, and whether this was done in an equitable manner, because of the waiver and assignment the chancellor ruled that Brown and her minor child lacked standing as a matter of law under the applicable statute and granted the motion to dismiss.

¶3. Following the filing of the accounting by the DHS, Brown and her minor daughter, Vanessa Hines, filed a Notice of Appeal on July 17, 1998, asserting that as mother of the minor child, Brown did have standing to bring an action against the DHS after she had assigned her rights to the Department upon receiving AFDC benefits for her minor child.

## STATEMENT OF THE LAW

### Standard of Review

¶4. Brown claims that the issue in this case represents solely a question of law, and the standard of review should therefore be de novo. DHS claims that Brown's execution of the child support assignment presents a question of "fact" which would prevent a de novo review, but does not suggest or cite to an applicable standard of review. The standard of review for findings of fact by the chancellor is that such findings will not be disturbed on appeal unless they are manifestly wrong, clearly erroneous, or not supported by substantial credible evidence. *Sandlin v. Sandlin*, 699 So.2d 1198, 1202 (Miss. 1997). At issue in this case is whether Brown has legal standing to bring an action against the DHS under the applicable statute, having assigned her rights to receive delinquent child support payments in order to receive AFDC benefits, and whether under the terms of the statute such an assignment is for all purposes, or for limited purposes. These are questions of law reviewed under the de novo standard. *Department of Human Servs. v. Gaddis*, 730 So.2d 1116, 1117 (Miss. 1998); *Mississippi State Dep't of Human Servs. v. Barnett*, 633 So.2d 430, 434 (Miss. 1993).

### I.

**DID THE TRIAL COURT ERR AS A MATTER OF LAW IN DISMISSING THE MOTION FOR ACCOUNTING AND PAYMENT COLLECTED, FILED BY CLAUDETTE BROWN AND HER MINOR CHILD VANESSA HINES, ON THE GROUNDS THAT THEY LACKED STANDING DUE TO THE EXECUTION OF A CHILD SUPPORT ASSIGNMENT TO THE DHS?**

¶5. Brown acknowledges the fact that she assigned any and all rights and interests in any cause of action, past, present or future, that she or her minor child, Vanessa Hines, had or may have had against any parent for failing to provide maintenance of her child or children for the period of time that assistance was received. The only issues remaining are whether the statute governing the assignment means that recipients of AFDC benefits relinquish their rights to any amounts collected over and above the amount necessary to reimburse

DHS for AFDC payments. The operative statute allows the DHS to set up a child support unit to collect delinquent child support and states in pertinent part:

> The Department of Human Services is hereby authorized and empowered to establish a single and separate Child Support Unit for the following purposes:
>
> (b) To secure and collect support by any method authorized under state law and establish paternity for any child or children receiving aid from the department, from a parent or any other person legally liable for such support who has either failed or refused to provide support, deserted, neglected or abandoned the child or children, including cooperating with other states in establishing paternity, locating absent parents and securing compliance with court orders for support of Temporary Assistance for Needy Families (TANF) children; the department may petition the court for the inclusion of health insurance as part of any child support order on behalf of any child receiving aid from the department unless good cause for noncooperation, as defined by the Social Security Act or the Mississippi Department of Human Services, is established;

Miss. Code Ann. § 43-19-31(b) (Supp. 1999).[1]

¶6. To facilitate this program, certain rights of welfare recipients are assigned to the DHS under Miss. Code Ann. § 43-19-35(1) (Supp. 1999):

> (1) By accepting public assistance for and on behalf of a child or children, the recipient shall be deemed to have made an assignment to the State Department of Human Services of any and all rights and interests in any cause of action, past, present or future, that said recipient or the children may have against any parent failing to provide for the support and maintenance of said minor child or children for the period of time that assistance is being paid by said department; said department shall be subrogated to any and all rights, title and interest the recipient or the children may have against any and all property belonging to the absent or non supporting parent in the enforcement of any claim for child or spousal support, whether liquidated through court order or not. The recipient shall also be deemed, without the necessity of signing any document, to have appointed the State Department of Human Services to act in his or her, as well as the children's, name, place, and stead to perform the specific act of instituting suit to establish paternity or secure support, collecting any and all amounts due and owing for child or spousal support as required or permitted under Title IV-D of the federal Social Security Act, and endorsing any and all drafts, checks, money orders or other negotiable instruments representing child or spousal support payments which are received on behalf of the recipient or the children, and retaining any portion thereof permitted under federal and state statutes as reimbursement for public assistance monies previously paid to the recipient or children.
>
> . . . .

Miss. Code Ann. § 43-19-35(1) (Supp. 1999).

¶7. The DHS submits that under Miss. Code Ann. § 43-19-35 (Supp. 1999) Brown, having assigned the rights of herself and her minor children, waived any standing she might have had to bring an action in the lower court. There is no question that Brown executed the waiver, but Brown argues that statute should not be read to include a waiver of sums collected above and beyond the amount of assistance she received.

¶8. This Court has considered this statute in the context of an appeal by a father who was ordered to pay

delinquent child support to the predecessor agency of the DHS, the Department of Public Welfare (DPW), after his former wife received public assistance for the benefit of her two children. Following the language of the statute, this Court held that once the wife accepted public assistance she was deemed to have assigned her rights to child support such that the DPW was empowered to sue the non-supporting parent. ***Hull v. State Dep't of Pub. Welfare***, 515 So.2d 1205, 1206 (Miss. 1987).

¶9. This Court reiterated this position in ***Mississippi State Dep't of Human Servs. v. Barnett***, 633 So.2d 430, 435 (Miss. 1993): "We have held that by virtue of its providing public assistance for the benefit of minor children, the DHS has become subrogated to the recipient's rights against the putative father." (citing ***Hull*** at 1207).

¶10. The question before this Court in ***Barnett*** was whether a settlement of a paternity action after the Department of Human Services had been denied the right to intervene could stand. We held that it could not. ***Id.*** at 436-37. We further held that the mother of the dependent children, having received public assistance, had no right to proceed unilaterally against the putative father of the children. ***Id.***

¶11. The issue now before this Court is different than those posed in ***Hull*** and ***Barnett***. Those cases treated the rights of the DHS vis a vis a non-custodial parent. The question here is whether the Department of Human Services, by virtue of the statutory assignment, has succeeded to the entire interest of the children and mother in support from the putative father including that portion over and above that necessary to reimburse the department for sums expended by it. We hold it has not.

¶12. Our statute creating the assignment, § 43-19-35, provides explicitly that DHS shall retain of the child support collected by virtue of the exercise of the rights gained in assignment only "any portion thereof permitted under federal and state statutes as *reimbursement* for public assistance monies previously paid to the recipient or children." Miss. Code Ann. § 43-19-35(1) (Supp. 1999)(emphasis added).

¶13. A further examination of our statutory law reveals that § 43-19-39(1) governs the distribution of money collected under § 43-19-35. It provides in relevant part that:

> (1) All child support payments collected by the child support unit pursuant to Section 43-19-35 shall be distributed in the manner as prescribed by the federal Social Security Act and any amendments adopted thereto.

Miss. Code Ann. § 43-19-39(1) (Supp. 1999).

¶14. The "Distribution of collected support" section of the federal Social Security Act provides:

> (a) In no event shall the total of the amounts paid to the Federal Government and retained by the State exceed the total of the amounts that have been paid to the family as assistance by the State.

42 U.S.C.A. § 657 (West 1999).

¶15. Our statutory law, then, is clear. Any distribution of child support collected under § 43-19-35 must be distributed in compliance with the federal Social Security Act. Miss. Code Ann. § 43-19-39 (Supp. 1999). The federal Social Security Act states that DHS may not retain more than was paid. 42 U.S.C.A. § 657 (West 1999). It follows that Brown is entitled to all monies collected above the amount received in assistance.

¶16. While this is our first opportunity to meet this issue, other courts have addressed the question. Other states have looked to 42 U.S.C.A. § 657 (West 1999), for guidance and have come to the conclusion that any money collected by the state above the amount paid must be given to the family. *In re Marriage of Cespedes*, 895 P.2d 1172, 1175 (Colo. Ct. App.1995); *Pettit v. Pettit*, 626 N.E.2d. 444 (Ind. 1993); *In re Marriage of Lathem*, 642 S.W.2d 694 (Mo. Ct. App. 1982); *Middleton/DPW v. Robinson*, 728 A.2d 368 (Pa. Super. Ct. 1999).

¶17. These cases take the view, compelled by the federal statutory scheme, that the assignment to state child support agencies is a limited one designed primarily to facilitate recoupment of public funds paid. They hold that the assignment does not extinguish all rights of the assignor.

¶18. DHS is not nor should it be a "for profit" enterprise. Indeed the federal law governing the funds which it distributes does not allow it to be. DHS should make sure that every cent above public assistance obtained for support is used where it is needed most, the care of the child(ren). The amount that the DHS may retain is only that amount "permitted under federal and state statutes as reimbursement for public assistance monies previously paid to the recipient or children." Brown is entitled to an accounting and recovery of the excess.

## II.

¶19. For the forgoing reasons, we reverse the judgment of the chancellor, render judgment for Brown for the recovery of the excess of the amount necessary to reimburse the state, and remand to the chancery court for determination of that amount.

¶20. **REVERSED, RENDERED IN PART, AND REMANDED.**

### PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR.

1. This statute was revised during the 1999 regular session, but the quoted section was unchanged.